**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**Kenneth ALSTON, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 27, 1999.

Filed Feb. 11, 2000.

Reargument Denied April 14, 2000.

---

**COMMONWEALTH of Pennsylvania,
Respondent,**

v.

**Ronald R. DONALDSON, Petitioner.**

Supreme Court of Pennsylvania.

April 11, 2000.

Alston B. Meade, Jr., Philadelphia, for appellant.

Aljali Prasad, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CAVANAUGH, KELLY and BECK, JJ.

BECK, J.:

¶ 1 This case raises the novel question of whether a violation of Pennsylvania Rule of Criminal Procedure 1119, titled Request for Instructions, Charge to the Jury, and Preliminary Instructions, is sufficient to warrant a new trial or whether a defendant must establish prejudice as a result of the violation. After careful consideration of the applicable law, we hold that in order to prevail on a Rule 1119 claim, a party must prove prejudice. Hence, we affirm the judgment of sentence.

¶ 2 The evidence at trial, when viewed as it must be in the light most favorable to the Commonwealth, established the following. While an inmate at the State Correctional Institution at Smithfield, appellant suffered an injury to his mouth that required medical attention. Corrections Officer ("CO") Robert Bryant was assigned to transport appellant to the hospital. During the transportation process, appellant repeatedly ignored the commands of both the nurse who was treating him and CO Bryant. The nurse, Elizabeth Hoffman, testified that she believed appellant was tampering with the wound so as to prevent it from healing. CO Bryant testified that appellant was uncooperative and verbally abusive while in the officer's custody. Despite repeated warnings to refrain from this conduct, appellant continued. During the course of his contact with CO Bryant, appellant continually spat blood at the officer. Bryant described a hostile and aggressive scene with appellant.

¶ 3 As a result of this incident, appellant faced charges of Aggravated Harassment by Prisoner, Disorderly Conduct and Harassment. Thereafter, the Commonwealth learned that appellant had hepatitis C and so amended the charges to include Assault by Prisoner. A jury convicted appellant of the charges and this timely appeal followed.

¶ 4 Appellant's first claim concerns the trial court's failure to comply with Rule 1119, which provides, in pertinent part:

Any party may submit to the trial judge written requests for instructions to the jury. Such requests shall be submitted within a reasonable time before the closing arguments, and at the same time copies thereof shall be furnished to the other parties. *Before closing arguments, the trial judge shall inform the parties on the record of the judge's rulings on all written requests.* The trial judge shall charge the jury after the arguments are completed.

Pa.R.Crim.P. 1119(a) (emphasis supplied).

¶ 5 The record reflects that appellant's counsel proffered jury instructions to the court in advance of his closing argument. In violation of Rule 1119, the Court refused to make an on-the-record determination of the proffered instructions before appellant made his closing remarks.

¶ 6 At oral argument before this court, the parties debated whether a violation of Rule 1119's mandate is *per se* reversible error. Appellant argued that even if it is not, he was indeed prejudiced by the court's error and is entitled to a new trial.

¶ 7 The Commonwealth's position was that a breach of the rule alone is insufficient to require reversal and a party must establish prejudice as a result of the violation. In this case, the Commonwealth argues, no prejudice inured to appellant and so he is not entitled to appellate relief.

¶ 8 Both sides rely on *Commonwealth v. Hendricks*, 376 Pa.Super. 381, 546 A.2d 79 (1988), for support. In *Hendricks*, as in this case, the trial judge rejected counsel's request for an on-the-record ruling regarding jury instructions. A panel of this court held that a new trial was warranted because the court's violation of Rule 1119 "rendered meaningless" appellant's closing argument. *Id.* at 83.

1. We are aware that the concurring opinion in *Hendricks* may lead one to believe that a

¶ 9 The *Hendricks* court noted that Rule 1119(a) was patterned after Federal Rule of Criminal Procedure 30, the purpose of which is "to require the judge to inform [counsel] in a fair way what the charge is going to be, so that they may intelligently argue the case to the jury." *Id.* at 81. Relying on federal case law interpreting Federal Rule 30, the *Hendricks* court held that "an inquiry into the appropriateness or correctness of the proposed jury instructions is irrelevant." *Id.* Instead, "the primary focus of the rule should be a determination whether the defense was prejudiced for tailoring its closing argument to instructions that ultimately were not given to the jury." *Id.*

¶ 10 Our reading of the *Hendricks* case leads us to conclude that prejudice is indeed a mandatory component of a Rule 1119 inquiry. The excerpts set out above support such an interpretation, as do other portions of the *Hendricks* opinion. For instance, the *Hendricks* court quoted federal case law when it stated that "[f]ailure of the court to comply with Rule 30 requires the granting of a new trial if 'counsel's closing argument was prejudicially affected thereby.'" *Id.* (emphasis supplied) (quoting *United States v. McCown*, 711 F.2d 1441, 1452 (9th Cir.1983)). Further, the *Hendricks* court analyzed in great detail the jury instruction requests made by counsel and the closing argument made to the jury, drawing a nexus between the court's error and counsel's specific statements. Finally, the *Hendricks* holding is quite clear: "Accordingly, we conclude that the court's failure to inform counsel of its ruling on the requested points for charge prior to closing arguments and the jury instruction, *was prejudicial* to appellant's defense and warrants that a new trial be granted." *Id.* at 83 (emphasis supplied). In light of all of these factors, we hold that Rule 1119 relief is not warranted unless prejudice has been established.[1]

Rule 1119 violation always constitutes reversible error. *See id.* at 83 (Del sole, J., concur-

¶ 11 We now consider whether appellant suffered prejudice as a result of the trial court's error. This task is complicated by the fact that counsels' closing arguments were not recorded in this case. According to the trial judge, the recording of a closing argument is not done in his courtroom unless a party requests it. Here, neither party requested that the court stenographer record the closing arguments.

¶ 12 Despite this inadequate record, we are nonetheless able to address appellant's claim. For even if we accept as true everything appellant claims counsel said in his closing statement, we still would find no prejudice stemming from the court's charge to the jury.

■ ¶ 13 Appellant claims that his closing argument focused on an "involuntary actions" defense, that is, he claimed throughout trial and in closing that his coughing and spitting at CO Bryant was beyond his control and, therefore, not within the statute's purview. The statute at issue, Assault by Prisoner, provides in pertinent part:

> A person who is confined in or committed to any local or county detention facility, jail or prison or any State penal or correctional institution or other State penal or correctional facility located in this Commonwealth is guilty of a felony of the second degree if he, while so confined or committed or while undergoing transportation to or from such an institution or facility in or to which he was confined or committed, intentionally or knowingly, commits an assault upon another with a deadly weapon or instrument, or by any means or force likely to

produce serious bodily injury. A person is guilty of this offense if he intentionally or knowingly causes another to come into contact with blood, seminal fluid, saliva, urine or feces by throwing, tossing, spitting or expelling such fluid or material when, at the time of the offense, the person knew, had reason to know, should have known or believed such fluid or material to have been obtained from an individual, including the person charged under this section, infected by a communicable disease, including, but not limited to, human immunodeficiency virus (HIV) or hepatitis B.

18 Pa.C.S.A § 2703.

¶ 14 In his jury charge requests, Appellant asked the court to instruct the jury that in order to convict, it must find that appellant's actions were voluntary because an involuntary act cannot subject one to criminal liability. Appellant complains that the court did not use the word "involuntary" in its charge and argues that the failure of the court to do so undermined his closing argument.

¶ 15 We have reviewed the court's entire charge to the jury. We are confident that the court not only recited the law properly, but also clearly set forth the defense's strategy. The court addressed the jury as follows:

> So what you have to focus on in evaluating this charge in determining whether or not the facts, as you find them to be, fit this definition. You need to concentrate on the word intentional, and the word knowingly.
>
> Intentional contact is described as the opposite of accidental contact.

ring). However, we are not bound by the concurring opinion in *Hendricks* and instead must follow the rule set out by the majority in that case. Our reading of the majority opinion leads us to conclude that prejudice must be established before relief is due.

We observe that our analysis is in keeping with the *Hendricks* court's intention to follow federal case law interpreting Rule 30. The federal courts long have held that "failure to comply with the requirements of Rule 30 does

not *ipso facto* mandate reversal.... The question is whether or not the charge in its entirety was fundamentally prejudicial to ... [the appellant]." *United States v. Smith*, 619 F.Supp. 1441, 1446 (M.D.Pa.1985) (relying on *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Hartman*, 409 F.2d 198 (3d Cir. 1969); *United States v. Wander*, 601 F.2d 1251 (3d Cir.1979)).

In criminal law when someone is accused of intentionally doing something, you are asked to be satisfied beyond a reasonable doubt that this was the purpose that the person had in mind of the conduct that they engaged in.

To argue to you in this case that the defendant intended to spread his blood onto the correction officer, and the last time, as was testified to, if you find that testimony acceptable, to spit a large quantity of his blood into the face of the officer, that this wasn't an accident says the Commonwealth. The defendant says on the contrary, that I had this serious bleeding problem, it was an artery, and your heard the doctors testify for the defense as to what bleeding from an artery – how that's different from bleeding from a vein – and that he had no control over this is what the defendant told you, and this was an accident. . . .

So did he intentionally and knowingly do this? This is the determination that you have to make in this case.

Trial Transcript, 3/17/99, at 13–14.

¶ 16 In light of this excerpt, as well as the entire charge, we find no prejudice in the court's failure to use the term "voluntary" or "involuntary." Assuming for the sake of argument that appellant's closing remarks included all of the items he claims to have mentioned, we can discern no prejudice he suffered as a result of the court's charge to the jury.[2] In sum, we find no error in the jury instructions.

¶ 17 Appellant also claims that the court should have required the parties' closing remarks to be recorded. He relies on Pennsylvania Code of Judicial Administration Rule 5000.2(G), which provides that opening and closing arguments, as well as other items, be recorded.

¶ 18 Appellant claims a due process violation as well as a violation of his right of appeal. We reject this claim. Appellant's claim has been preserved for appeal and we have decided it on its merits. Appellant has suffered neither a due process violation nor a loss of his appellate rights.

¶ 19 Appellant's next claim centers on application of the Assault by Prisoner statute. Specifically, appellant argues that because § 2703(a) does not mention hepatitis C, the law cannot be interpreted as covering same. We disagree. The law clearly states that it applies to "communicable disease[s], *including but not limited to,*" HIV and hepatitis B. 18 Pa.C.S.A. § 2703(a). This language is more than sufficient to cover the communicable disease at issue in this case.[3] The record supports the jury's conclusion that § 2703 encompasses hepatitis C.

¶ 20 Appellant's final claim is that the disclosure of his prison medical records, which established that he had hepatitis C, constituted a privacy violation. We reject this claim. Appellant offers no authority for his claim of an absolute right of privacy in his prison medical records and, predictably, our research has uncovered none. The case law upon which appellant relies is not on point as it discusses generally the right of privacy.

¶ 21 In *Commonwealth v. Nieves*, 399 Pa.Super. 277, 582 A.2d 341 (1990), the appellant claimed that the method by which the Commonwealth seized his medical records, *i.e.*, the use of a subpoena as

---

2. Appellant also claims that the court erred in refusing to instruct the jury on "equally reasonable inferences," "causal relationship" and "summary offenses." However, he fails to develop these claims in his brief and does not articulate how he was prejudiced by these alleged errors. Our reading of the charge in its entirety leads us to conclude that prejudice is absent, thus appellant is not entitled to relief.

3. At trial, the court permitted the admission of evidence to establish the communicable nature of hepatitis C. In a separate claim, appellant argues that this evidence was irrelevant and prejudicial, and therefore, inadmissible. We do not agree. The evidence was relevant and probative of the elements of the crime charged. *See* 18 Pa.C.S.A. § 2703(a) (requiring actor's knowledge of *communicable* disease).

opposed to a petition, constituted a violation of his privacy. A panel of this court rejected his claim and specifically found the subpoena process proper. The court held that use of a subpoena was "adequate authority upon which the prison may rely in disclosing [an inmate's] . . . medical records." *Id.* at 344. The *Nieves* court further reasoned that even if it had deemed the procedure by which authorities accessed the records inadequate, it would not have ordered the evidence excluded since seizure of the records was proper under the law. *Id.*

¶ 22 While an inmate at Smithfield, appellant was informed of hepatitis C status. Thereafter, he defiantly and deliberately spat blood and saliva at a corrections officer. The prosecution subpoenaed his medical records to establish the elements of his crime. Use of the records to prove a crime designed specifically to redress appellant's dangerous behavior was both reasonable and fair. Appellant has not raised a viable privacy claim under these facts.

¶ 23 Judgment of sentence affirmed.