J-S12030-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RASHAD ALI IBRAHIM, | |
| Appellant | No. 450 MDA 2017 |

Appeal from the Judgment of Sentence entered January 30, 2017,
in the Court of Common Pleas of York County,
Criminal Division at No(s): CP-67-CR-0008008-2015.

BEFORE:  LAZARUS, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED APRIL 18, 2018**

Rashad Ali Ibrahim appeals *pro se* from the judgment of sentence entered against him on arson and related charges.[1]  After careful review, we affirm.

The trial court summarized the facts of this case as follows:

On March 27, 2015, at approximately 12:09 a.m., the West York Police and Fire Department responded to the rear of 1110 West Market Street for a report of a garage and car on fire.  This was the residence of Delba Laguer, who is [Ibrahim's] ex-girlfriend. Harry S. Heilman owns the residence and he had leased the top floor apartment to Ms. Laguer and another tenant occupied the bottom floor.

---

[1] Ibrahim was charged with arson under 18 Pa. C.S.A. § 3301(c)(2); arson under 18 Pa. C.S.A. § 3301(c)(1); risking catastrophe under 18 Pa. C.S.A. § 3302(b); two counts of criminal mischief under 18 Pa. C.S.A. § 3304(a)(1); and arson under 18 Pa. C.S.A. § 3301(d)(2).

Ms. Laguer stated that she had an argument two hours prior to the fire with [Ibrahim]. After the argument, the two parted ways and Ms. Laguer returned home. A short time later, Ms. Laguer heard the garage door shut and when she looked outside she observed a subject leaving the garage. She did not see the subject's face, but stated the subject's build and height was consistent with that of [Ibrahim]. Also, the subject was wearing clothing identical to what [Ibrahim] was wearing two hours prior when he and Ms. Laguer had last made contact. Subsequently, Ms. Laguer heard her car alarm and went to the detached garage behind her residence to determine why the alarm had started. Ms. Laguer then observed her vehicle, a 1999 Mazda sedan, fully engulfed in flames and fire spreading throughout the garage. At that point she called the police.

Detectives later obtained evidence that linked [Ibrahim] to the fire. Surveillance photos were obtained from the Giant Food Store of [Ibrahim] purchasing one can of Giant brand lighter fluid and a pack of lighters. This particular store is located approximately one block from the location of the fire. [Ibrahim] purchased the lighter fluid and the lighters twenty (20) minutes prior to the fire occurring that evening. Additionally, the individual in the surveillance photos was wearing the same gray sweatshirt that Ms. Laguer identified the man she observed leaving the garage wearing on the night of the alleged incident. [Ibrahim] was subsequently charged with the [arson related] offenses.

On November 9, 2016, at the conclusion of the trial, a jury unanimously found [Ibrahim] guilty on all counts. Sentencing was deferred in order for [Ibrahim] to obtain a pre-sentence investigation. On January 30, 2017, [Ibrahim] was sentenced to [an aggregate term of 2-4 years' incarceration in a State Correctional Institution]. Additionally, [Ibrahim] was ordered to pay restitution to Harry S. Heilman, the landlord of 1110 West Market Street, in the amount of five-hundred dollars ($500.00).

On February 8, 2017, [Ibrahim] filed a Post-Sentence Motion moving for a Judgment of Acquittal. On February 13, 2017, [the trial court] denied [Ibrahim's] Post-Sentence motion. A timely notice of appeal was filed on March 9, 2017.

Trial Court Opinion, 10/24/17, at 2-4.

After filing the notice of appeal, Ibrahim was not satisfied with his counsel's 1925(b) Statement of Matters Complained of on Appeal and requested to proceed with his appeal *pro se*. Following a **Grazier** hearing,[2] the trial court entered an order allowing Ibrahim to proceed in his appeal *pro se*. Both Ibrahim and the court complied with Pa.R.A.P. 1925.

We summarize the four issues raised by Ibrahim for consideration on appeal as follows:

1. Was the evidence at trial insufficient for a jury to convict Ibrahim beyond a reasonable doubt of arson and related charges because the prosecution never established that a crime was committed;

2. Did the court err in allowing the Commonwealth to request a jury instruction on "flight" and "consciousness of guilt" after closing arguments which resulted in Ibrahim being denied the opportunity to rebut the evidence during trial;

3. Did the court err in allowing inadmissible hearsay; and

4. Did the court abuse its discretion in admitting certain opinion testimony of Charles Zienkiewicz.

**See** Ibrahim's Brief at 3.

In reviewing sufficiency of evidence claims, "we determine whether the evidence admitted at trial, and all the reasonable inferences derived therefrom viewed in favor of the Commonwealth as verdict winner, supports

---

[2] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998) (requiring the trial court to hold an on-the-record determination of whether a defendant's waiver of counsel is knowing, intelligent and voluntary, before allowing that defendant to conduct a *pro se* appeal).

the jury's findings of all the elements of the offense beyond a reasonable doubt." **Commonwealth v. Jacoby**, 170 A.3d 1065, 1076 (Pa. 2017) (citation omitted). A sufficiency challenge is a pure question of law. Thus, our standard of review is *de novo* and our scope of review is plenary. **Id**.

Ibrahim was convicted of 6 separate charges. Although Ibrahim first challenges the sufficiency of evidence on the arson *and related charges*, he only sets forth an argument with respect to the charge of arson at 18 Pa.C.S.A. § 3301(c)(2). We conclude that Ibrahim's challenge to the remaining charges is waived. **Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007) (explaining this Court "will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.").

On the charge of arson, the relevant statute provides:

> 3301(c)(2), Arson Endangering Property
>
> (c) A person commits a felony of the second degree if he intentionally starts a fire or causes an explosion, whether on his own property or that of another, or if he aids, counsels, pays of agrees to pay another to cause a fire or explosion, and if:
>
>> (2) he thereby recklessly places an inhabited building or occupied structure of another in danger of damage or destruction.

18 Pa.C.S.A. § 3301(c)(2).

Ibrahim argues on appeal that the evidence presented to the jury did not establish the fire was intentionally set. This argument was not

specifically raised in his 1925(b) statement. Thus, the trial court only addressed the second part of this charge as it relates to recklessly endangering an occupied building. The court concluded Ibrahim's conduct "evidenced the legal malice needed to establish that [Ibrahim] consciously disregarded a substantial and unjustifiable risk that the residence located at 1110 West Market Street could have been damaged or destroyed by the fire set to the vehicle located in the detached garage." Trial Court Opinion, 10/24/17 at 12. We agree with the court's analysis of this issue.

Regarding the intentional aspect of the crime, Ibrahim did not raise this issue prior to filing his appellate brief. He did not specify to the trial court which of the criminal charge(s) lacked sufficient evidence, what elements of those charge(s) lacked proof, and why the evidence was insufficient to support the verdict. As we have previously held, "a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no Concise Statement at all." **Commonwealth v. Heggins**, 809 A.2d. 908, 911 (Pa. Super. 2002) (citation omitted). Because the challenge to lack of intent was not previously raised, we find that it is waived. **See Hardy, supra**.

If the issue was preserved and properly raised, we would still find it lacks merit. First, Ibrahim relies on our decision in **Commonwealth v. Scott**, 597 A.2d 1220 (Pa. Super. 1991) to suggest that his guilt was not proven by a reasonable doubt. Ibrahim's Brief at 11. In **Scott**, however, the court concluded there was an equally sufficient possibility that a third

party committed the offense, and that the Commonwealth did not sufficiently cast doubt on that person. *Id*. at 1224. Linda Scott told the police that she was fighting with her boyfriend, Nate Williams, about his excessive drinking and smoking crack, on the night of the incident. She threatened to take their two-year old baby and leave. He became aggressive with her so she took the baby and went downstairs. She realized that she left her pocketbook and shoes in the room with Williams, but was afraid to go back upstairs unarmed, so she grabbed the charcoal fluid because it was the first thing she saw. She planned to use it to defend herself if necessary. When she went back upstairs, Williams swung his crutches at her, so she sprayed a little bit of kerosene, charcoal fluid, at him, but then she left. Scott did not know how the fire started; she denied putting a match to the lighter fluid or in any way starting the fire herself. Ten minutes later, the house was in flames. The trial court found that Scott was not believable and that she deliberately, willfully and maliciously set the fire.

On appeal, we recognized that the Commonwealth may establish the entirety of its case through circumstantial evidence. *Id*. at 1223 *(citing Commonwealth v. Colon*, 399 A.2d 1068, 1073 (Pa. Super. 1979)). However, we concluded that the reasonable inferences from the record, in that case, were equally consistent with the possibility that the fire was set by Williams instead of Scott. *Id*. at 1224. The Commonwealth offered no proof

to cast doubt on those inferences. As such, we found no evidence to support the conclusion, beyond a reasonable doubt, that Scott had set the fire. *Id*.

The facts of Ibrahim's case differ significantly from **Scott**, in that Ibrahim was the only one with a motive (he fought with his ex-girlfriend shortly before the fire), he was seen on video surveillance buying *both* lighter fluid *and* a lighter (indicating he intended to light a fire), and he was the only person seen leaving the garage, minutes before it was engulfed in flames. Additionally, Ibrahim told someone on his cell phone, in front of the cashier, that he had a feeling he was going to jail or getting arrested that night. N.T., 11/9/16, at 155, 161-62. Unlike in **Scott**, there was not another equally likely perpetrator at the scene who could also have caused the fire, and Ibrahim had lighters with him to start the fire.

Ibrahim also contends the Commonwealth did not establish that a crime actually occurred because the cause of the fire was undetermined, as classified by Fire Captain Zienkiewicz. Brief at 12.

Captain Zienkiewicz testified that he contacted the state police fire marshal, but the marshal was unwilling to investigate this fire because it was solely a vehicle and there were no civilian casualties and no residential damage. N.T., 11/9/16, at 215. The Captain could not determine the location the fire started, but did not believe the fire was accidental. **Id**. at 220.

The Commonwealth's expert, Albert Lattanzi, testified that the fire was started by an ignitable liquid, but could not narrow the cause to a specific

product, because the isoparaffinic compound is found in many household products, including charcoal fluid, paint thinners, and degreasers. *Id*. at 206-09.

Detective David Kahley found a red cap from a can of lighter fluid in the garage next to the car. *Id*. at 170. The cap was identical to those on the Giant brand lighter fluid. *Id*. at 176. Ibrahim checked out at 11:47 p.m. with a can of lighter fluid and a lighter, and the 9-1-1 call for the fire came at 12:07 a.m. *Id*. at 184.

As we previously stated, the Commonwealth may sustain its burden of proof beyond a reasonable doubt by means of wholly circumstantial evidence. *Commonwealth v. Lewis*, 911 A.2d 558 (Pa. Super. 2006). Although no one actually saw Ibrahim start the fire, the jury heard ample circumstantial evidence, which we view in the light most favorable to the Commonwealth as the verdict winner. Looking at all the evidence, the jury inferred that Ibrahim intended to start the fire. The jury found this evidence sufficient, and we will not substitute our judgment for theirs*. See, e.g., Commonwealth v. Haughwout*, 837 A.2d 480, 484 (Pa. Super. 2003). Thus, we find no merit to Ibrahim's argument that the Commonwealth failed to present evidence of a crime.

Ibrahim's second issue on appeal is whether the court erred in allowing the Commonwealth to request a jury instruction on "flight" and "consciousness of guilt" after closing arguments, which resulted in Ibrahim being denied the opportunity to rebut the evidence during trial.

Following closing arguments, the trial judge called a sidebar conference and asked the Commonwealth if it wanted the charge regarding consciousness of flight. N.T., 11/9/16, at 276. Ibrahim objected to adding this instruction to the closing charge because the charging conference was already concluded. *Id*. The trial judge overruled the objection and stated that "this is a charge that would be appropriate" and that the timing of the submission was not an issue. *Id*. at 277.

The court relied on Criminal Rule of Procedure 647(E), which provides, in relevant part, that "[t]he trial judge may give any other instructions to the jury before the taking of evidence or at any time during the trial as the judge deems necessary and appropriate for the jury's guidance in hearing the case." Pa. R. Crim. P. 647 (E).

Although this rule gives a trial judge leniency before and during the trial, it must be read in conjunction with Rule 647 (B), which provides in part: "***Before closing arguments***, the trial judge shall inform the parties on the record of the trial judge's rulings on all written requests and which instructions shall be submitted to the jury in writing. The trial judge shall charge the jury after the arguments are completed." Pa. R. Crim. P. 647 (B).

This Rule, formerly Rule 647(A), was amended in 1985 to change prior practice, pursuant to which the trial court did not rule on proposed jury instructions until after counsel for the parties had completed their closing arguments to the jury. As this Court recognized in ***Commonwealth v.***

*Hendricks,* 546 A.2d 79 (Pa. Super. 1988), *appeal denied,* 522 Pa. 573, 559 A.2d 35 (1989), the difference in the procedure following the 1985 amendment is that the court now is **required** to rule on proposed written jury instructions before closing arguments and charging the jury, whereas under the old procedure, the court ruled on the requested jury instructions **after** closing arguments and the charge to jury. **Id.** at 81 (emphasis in original). Noting that Rule 647[B] effectively mirrors Rule 30 of the Federal Rules of Criminal Procedure, this Court indicated that under both rules, the trial court "is required to rule on all proposed jury instructions prior to charging the jury and closing summations." **Id***.*

We further recognized that "[t]he purpose of this rule is to require the judge to inform [counsel] in a fair way what the charge is going to be, so that they may intelligently argue the case to jury." **Id***.* (citing **United States v. Wander***,* 601 F.2d 1251, 1262 (3d Cir.1979)); **see also Commonwealth v. Alston***,* 748 A.2d 677, 679 (Pa. Super.) *appeal denied,* 795 A.2d 970 (Pa. 2000). In essence, the rule requires the trial court to provide the parties with adequate notice of the instruction before closing argument, and the rule is plainly violated when the trial court presents a new theory of liability, or otherwise materially modifies the original instructions, after closing arguments have been completed. **See generally Commonwealth v. Melvin,** 103 A.3d 1, 43–51 (Pa. Super. 2014; **United States v. Smith***,* 789 F.2d 196, 202 (3d Cir. 1986).

Thus, the trial court's decision to issue a supplemental instruction to the jury on flight, in this case, after closing arguments violated Rule 647(B). At no time prior to closing arguments did the trial court advise counsel that it intended to instruct the jury on consciousness of flight. It was only after closing arguments that the court suggested adding this charge, because it thought the charge was appropriate.

We have previously held that a violation of Rule 647[B], however, does not *ipso facto* mandate a reversal for a new trial. **Melvin**, 103 A.3d at 49. In **Melvin**, the trial court gave an additional instruction once the jury had retired to deliberate; defendant Orie Melvin objected. Fully analyzing this issue, we relied on our decisions in **Alston***,* and **Hendricks***,* before concluding that "prejudice is indeed a mandatory component" of a Rule 647[B] inquiry.[3] **Id**.

---

[3] In **Hendricks**, we compared cases applying the federal rule on this issue, and observed that "[f]ailure of the court to comply with Rule 30 requires the granting of a new trial if 'counsel's closing argument was prejudicially affected thereby.'" **Hendricks***,* 546 A.2d at 81 (quoting **United States v. McCown***,* 711 F.2d 1441, 1452 (9th Cir. 1983)). Further, in **Hendricks** we analyzed in great detail the jury instruction requests made by counsel and the closing argument made to the jury, drawing a nexus between the court's error and counsel's specific statements. Finally, our holding in **Hendricks** is quite clear: "Accordingly, we conclude that the court's failure to inform counsel of its ruling on the requested points for charge prior to closing arguments and the jury instruction, was prejudicial to appellant's defense and warrants that a new trial be granted." **Id.** at 83. In light of all of these factors, we held that Rule [647] relief is not warranted unless prejudice has been established. **Alston***,* 748 A.2d at 679.

In **Melvin**, before we addressed Orie Melvin's contention that she suffered actual prejudice resulting from the trial court's clear error, we noted that she arguably waived this claim by failing to request the opportunity to offer additional argument to the jury to address the supplemental charge after being informed that it would be given.  **Id**.   We observed that although this issue had not been discussed by any Pennsylvania appellate court in connection with Rule 647[B], federal courts have held that prejudice resulting from violations of Federal Rule of Criminal Procedure 30 may, in some cases, be ameliorated or eliminated by permitting counsel the opportunity for supplemental argument to the jury. **Id; see, e.g., United States v. Fontenot**, 14 F.3d 1364, 1368 (9th Cir.1994) (holding when a new theory is presented to the jury in a supplemental instruction, after closing argument, the court generally should give counsel time for additional argument); **United States v. Civelli**, 883 F.2d 191, 196 (2d Cir.1989) (finding that the principles underlying Rule 30 may very well require that the district court allow further argument after an additional instruction has been given); **United States v. Gaskins**, 849 F.2d 454, 457 (9th Cir. 1988) (granting a new trial for violation of Rule 30 after the district court denied defense counsel's request to reopen closing argument); **but see Cruz v. State**, 407 Md. 202, 963 A.2d 1184, 1192 (2009) (concluding that a supplemental closing argument would not have cured the problem created by the court's eleventh hour insertion of a new theory of culpability) (some citations and quotations omitted).

In **Melvin**, because neither party raised or briefed the waiver issue, and, because under Pennsylvania law, a violation of Rule 647[B] was still novel, we addressed Orie Melvin's claim of actual prejudice on its merits. **Melvin**, 103 A.3d at 49. We note that because Ibrahim's counsel did not ask to readdress the jury in light of this additional charge, this arguably constituted a waiver of the issue. However, we will address the prejudice claim.

Here, Ibrahim argues that the court erred in allowing the Commonwealth to request a jury instruction on "flight" and "consciousness of guilt" after closing arguments, which resulted in Ibrahim being denied the opportunity to rebut the evidence during trial. The inclusion of an additional instruction, after closing arguments, would not have resulted in additional testimony or an opportunity to rebut evidence *during the trial*. Thus, if this is Ibrahim's argument, we find he suffered no prejudice.

Assuming Ibrahim means the additional instruction denied him the opportunity to address the consciousness of guilt and flight issues in his *closing argument*, we still find no prejudice. In reviewing his closing argument, we note that Ibrahim's counsel anticipated an argument from the Commonwealth about flight and consciousness of guilt, and he addressed it as follows:

> Now let's talk about [Ibrahim]. You heard no evidence that he ever confessed to these crimes, had burn marks, burn injuries from starting the fire, or that the police found any evidence on him indicating he was involved in the fire. As to that, the Commonwealth will most likely argue he was hiding

- 13 -

from them. However, you heard mention [Ibrahim] had a job at the time the police were looking for him, and Detective Kahley never asked relatives or anyone if they knew where he was.

And ask yourself, if he didn't commit a crime, why would you have any idea that the police were looking for you or try to hide?

In conclusion, what do you have? No direct evidence linking [Ibrahim] to the scene of the crime.

N.T., 11/9/16, at 263.

Our review of the record shows Ibrahim argued against the flight theory by addressing the issue of whether he was "hiding" when police were allegedly looking for him after the fire. Ibrahim did not state what other arguments he would have made, or what other evidence he would have referred to in his closing, if he had known the judge was going to give the contested instruction. Without so stating, he is essentially arguing presumed prejudice. This, we have held, is insufficient. ***Melvin***, at 50. Ibrahim has not provided this Court with any basis to evaluate the degree, if any, of any actual prejudice resulting from the trial court's error. As such, we find no prejudice occurred by the judge's decision to give this additional instruction after closing arguments.

Ibrahim's third allegation of error is that the trial court allowed inadmissible hearsay testimony from Detective David Kahley. Ibrahim contests the following exchange on direct examination by the Commonwealth:

Q. I'm showing you what I've marked as Commonwealth's exhibit number 25, do you recognize that?

A. I do. These are the two pictures that I was provided that I showed to Delba Laguer.

Q. And after showing those pictures to Delba did she make any identifications?

A. She did. She positively identified the person as the defendant.

Q. And did she identify him as what? How did she identify him?

A. That she knew from being her former boyfriend.

N.T., 11/9/16, at 177-178.

Ibrahim objected to this testimony on the grounds of hearsay. The trial court overruled the objection. This Court can affirm on any basis that is supported by the record. *See Commonwealth v. Clouser*, 998 A.2d 656, 661 n.3. (Pa. Super. 2010).

The trial court determined that this testimony was admissible because it was not offered for the truth of the matter asserted, but to explain Detective Kahley's course of conduct regarding the steps he took in investigating the fire. Trial Court Opinion, 10/24/17, at 19. An "out-of-court statement offered not for its truth but to explain a witness's course of conduct is not hearsay." *Commonwealth v. Rega*, 933 A.2d 997, 1017 (Pa. 2007) (*citing* *Commonwealth v. Sneed*, 526 A.2d 749, 754 (Pa. 1987) (holding that where a police officer related the contents of a radio call that prompted his trip to the crime scene, such testimony was not hearsay

- 15 -

because it was introduced solely to explain how the officer came to be at the scene)). Course of conduct testimony is often applied to police, allowing them to explain what information they were acting on when they pursued a particular avenue of investigation. *See, e.g., Commonwealth v. Johnson*, 42 A.3d 1017, 1035 (Pa. 2012).

We agree that this testimony was not hearsay as it was not offered for the truth of the matter asserted. Additionally, we conclude that admission of the statements was harmless, because Ms. Lauger was present at trial, testified, and was not only available for cross examination, but was in fact, subjected to cross-examination. We find no error in admitting this testimony from Detective Kahley.

Ibrahim's final contention on appeal is whether the court abused its discretion in admitting certain opinion testimony of Fire Captain Charles Zienkiewicz of the West York Borough Fire Department. Specifically, Ibrahim raises five arguments regarding this testimony:

1) It was based off of information learned from others;

2) It called for conclusions based on specialized knowledge for which the witness was not qualified as an expert;

3) No notice was provided to Ibrahim, regarding the opinion presented;

4) No expert report was provided; and

5) No basis existed under Pa. R.E 702 to admit the witness as an expert, nor under Pa. R.E. 701 as a lay opinion.

*See* Ibrahim's Brief at 20.

- 16 -

Preliminarily, we note decisions concerning the admissibility of evidence are within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Tyson*, 119 A.3d 353, 357 (Pa. Super. 2015) (citation and quotation omitted). "Accordingly, a ruling admitting evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." *Commonwealth v. Huggins*, 68 A.3d 962, 966 (Pa. Super. 2013) (citations and internal quotations omitted).

Here, the court found Captain Zienkiewicz did not testify as an expert witness at trial, but rather gave permissible lay witness testimony. Trial Court Opinion, 10/24/17, at 14-18. We agree.

When a witness's testimony is based upon "scientific, technical, or other specialized knowledge [ ] beyond that possessed by the average layperson," the witness must be qualified as an expert "by knowledge, skill, experience, training or education." Pa.R.E. 702(a). Nevertheless, Pennsylvania Rule of Evidence 701 permits a lay witness to offer opinion testimony so long as the opinion is:

    (a)    rationally based on the witness's perception;

    (b)    helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

    (c)    not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701. Further, this Court has noted that "lay opinion testimony embracing an ultimate issue in a case is admissible as long as the witness perceived the events upon which his opinion is based." **Commonwealth v. Bowser**, 624 A.2d 125, 133 (Pa. Super. 1993), *appeal denied*, 644 A.2d 161 (Pa. 1994), *cert. denied*, 513 U.S. 867 (1994).

Pursuant to Pennsylvania Rule of Evidence 104(a), the trial court exercises its discretion to determine whether such a lay opinion is helpful to the factfinder, which is the touchstone of its admissibility. **See** Pa.R.E. 104(a); **Lewis v. Mellor**, 393 A.2d 941, 948–49 (Pa. Super. 1978) (*en banc*) (describing this procedure under the Federal Rules and adopting this approach in Pennsylvania).

This Court's decision in **Commonwealth v. Kennedy**, 151 A.3d 1117 (Pa. Super. 2016), is instructive. In **Kennedy**, the trial court denied an oral motion in *limine* to preclude a police crime scene investigator from testifying regarding her observations of the trajectory of bullets fired through the victim's door. **Id**. at 1121. The officer later testified that "she placed rods in the bullet holes of the door" and that "the only logical conclusion based upon the bullet trajectories, ... was that the door was slightly ajar when [the defendant] shot [the victim]." **Id.** at 1122. On appeal, the defendant argued the court erred in permitting the officer to offer her lay opinion that the door was "slightly open" at the time of the shooting. **Id.** However, we disagreed, concluding the officer's testimony was a permissible lay opinion

based on the officer's perception of the crime scene, and did not require the specialized knowledge of an expert witness. Indeed, we explained "[a]ny individual could place a rod in a bullet hole and discern which direction the bullet traveled." *Id.* at 1123. *See also Commonwealth v. Berry*, 172 A.3d 1, 5 (Pa. Super. 2017) (holding that police could give lay opinion that spots on floor appeared to be blood).

Here, Captain Zienkiewicz testified that he personally observed the fire-damaged car. He stated that "[t]here was a lot of damage to the vehicle. There was a lot of damage to the structure itself." N.T., 11/9/16, at 216. He also stated "I did notice there was a lot of heavy damage in the interior of the vehicle, not typical of a fire that would say just start in the engine compartment." *Id*. at 219. And further:

> then looking at the vehicle, seeing the damage did not start in the engine compartment, but in the interior of the vehicle, it was really hard for me to say it was per se accidental, but I could not – on my statement – I couldn't have that determination that [] indeed, in fact, was caused by anything else. So I had it marked undetermined. I could not prove that anybody lit it, started it or whatnot. And the car was so damaged that [] I don't think we would have been able to find a pinpoint origin on where it started, so we did label it on the fire department's side as undetermined.

*Id*. at 220.

He explained that in an engine compartment fire, the majority of the damage is in the engine compartment and the engine compartment solely. *Id*. at 221. That was not the case here.

Additionally, Captain Zienkiewicz testified to the common, well-known fact that "it's not typical of a car to just spontaneously combust." *Id*. at 222. Although he learned that the car had been sitting idle from other sources, this information was irrelevant to his statement. He never opined that this particular car did not spontaneously combust. Instead, he spoke in general terms about his everyday practical knowledge of fires. It does not take scientific or specialized knowledge to conclude that cars do not spontaneously combust, or to conclude that if most of the damage was to the interior of the car that the fire did not start in the engine. Thus, his opinions were merely lay opinions, permissible under Rule 701.

Significantly, the Captain could not determine the cause of the fire. He never stated that this fire was caused by arson or an accelerant, nor did he determine the location of origin of the fire, which would have required expert testimony. Thus, Captain Zienkiewicz did not proffer an expert opinion on causation under Rule 702, but merely offered his general observations and conclusions based on what he witnessed at the scene. We discern no abuse of discretion in admitting this limited lay opinion testimony.

In sum, we find no merit to any of Ibrahim's four issues on appeal. The evidence at trial was more than sufficient for a jury to convict Ibrahim beyond a reasonable doubt of arson; his claims on the related charges are waived. Although the trial court erred in allowing the Commonwealth to request a jury instruction on "flight" and "consciousness of guilt" after closing arguments, this resulted in no prejudice to Ibrahim. The court did

not err in allowing testimony of Detective Kahley about his conversation with the victim. Finally, the court did not abuse its discretion in admitting certain lay opinion testimony of Charles Zienkiewicz. Therefore, we affirm Ibrahim's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/18/18