J-S03037-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DALONZO MONTEZ ZEPPRINANS | : | |
| | : | No. 1681 EDA 2017 |
| Appellant | | |

Appeal from the PCRA Order May 4, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0011333-2013

BEFORE:   BENDER, P.J.E., PANELLA, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                **FILED APRIL 25, 2018**

Appellant, Dalonzo Montez Zepprinans, appeals *pro se* from the order entered in the Court of Common Pleas of Philadelphia County dismissing his first petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  He asserts the PCRA court erred when it rejected his claims challenging the trial court's refusal to recuse itself and asserting trial counsel's ineffective assistance.[1]  We affirm.

The PCRA court aptly provides the procedural history and facts of the case as follows:

**Procedural History**

---

[1] At the outset, we note with displeasure Appellant's attempt to assert bias on the part of a learned trial judge simply because she is a female jurist.  ***See infra***.

---

\*   Former Justice specially assigned to the Superior Court.

On July 11, 2013, [Appellant] was arrested and charged with Aggravated Assault and related offenses. On July 16, 2014, after this Court denied the Appellant's Motion to Suppress video evidence, the Appellant elected to be tried on a bench trial. On July 17, 2014, the [trial court] convicted Appellant of Aggravated Assault, Firearms Not to Be Carried Without a License ("VUFA"), Possession of an Instrument of Crime ("PIC"), and Recklessly Endangering Another Person ("REAP") and sentenced him to five to ten years for VUFA, with concurrent sentences of two to four years for Aggravated Assault, one to two years for PIC, and one to two years for REAP. After Appellant timely appealed, the Superior Court affirmed his judgment of sentence on July 6, 2015. [ ]

On February 3, 2016, Appellant filed a *pro se* [PCRA] petition. On May 16, 2016, PCRA counsel entered his appearance. On July 14, 2016 PCRA counsel filed a no-merit letter pursuant to **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*) and a motion to withdraw. On August 18, 2016, [the PCRA court] filed a Notice of Intent to Dismiss under Pa.R.Crim.P. 907. On August 10, 2016, Appellant filed a response to PCRA counsel's Finley letter.[ ] In his letter, Appellant reiterated his *pro se* petition claims and alleged that PCRA counsel only communicated with him once and did not properly address his issues. On September 1, 2016, this Court removed counsel and appointed new PCRA counsel. On October 13, 2016, Appellant counsel filed an amended petition.

On October 31, 2016, Appellant filed a Motion to Proceed pro se and requested a **Grazier** hearing.[2] On November 16, 2016, Appellant forwarded a letter to [the PCRA court's] chambers stating that, even though his second PCRA counsel filed an amended petition, PCRA counsel did not address all of Appellant's issues. On November 28, 2016, after a **Grazier** hearing, [the PCRA court] removed PCRA counsel and permitted Appellant to proceed *pro se*.

On December 20, 2016, Appellant filed a *pro se* amended petition. On March 7, 2017, the Commonwealth filed a Motion to Dismiss. On March 27, 2017, [the PCRA court], after finding Appellant's

---

2 **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

claims meritless, filed a Notice of Intent to Dismiss under Pa.R.Crim.P. 907. On April 19, 2017, Appellant filed a response to [the trial court's] 907 Notice [in which he raised the issues now raised in the present appeal].

**Facts**

In its July 6, 2015 Opinion, the Superior Court recounted the relevant facts:

> On July 11, 2013 at about 2:30 a.m., Philadelphia Police Sergeant Francis Rawls responded to a call regarding a person with a gun at 68th Street and Limekiln Pike. Rick Miller, the complainant, had returned to his home and called 911, claiming that a man named "Lonzo" had shot at him. Miller provided a description of what the shooter was wearing, including blue jeans and a white t-shirt. Upon arriving at the scene, Sergeant Rawls encountered Miller, who indicated that the shots had been fired in front of Appellant's house and pointed out where the house was located. An unidentified woman permitted Sergeant Rawls to enter the residence and directed him to an upstairs bedroom, where Appellant was discovered, wearing an outfit matching Miller's description. Sergeant Rawls secured the property pending receipt of a search warrant.
>
> Detective Edward Davis interviewed Miller twice. During the first interview, at about 3:30 a.m., Miller stated that someone other than Appellant had shot at him. During a second interview, conducted approximately 40 minutes after the first interview concluded, Miller indicated that Appellant was the shooter and that he had stated otherwise because he was scared. After the second interview, Detective Davis applied for, and obtained, a warrant to search Appellant's home for ballistics evidence and proof of residence.
>
> Detective Davis conducted the search at approximately 8:30 a.m. He recovered a 32-caliber fired cartridge casing [("FCC")] from the outside of the landing area near Appellant's porch. Inside, he

recovered Appellant's driver's license and personal correspondence addressed to Appellant at that address. While conducting the search, Davis noticed a monitor split into four views that looked like a security camera monitor. Two of the views showed a live feed of the porch and front outside area of the house, where the shooting was alleged to have occurred and where the casing was recovered. The monitor was attached to a digital video recorder ("DVR") that Davis also recovered. Video footage contained on the DVR depicts Appellant firing a handgun.

Appellant appeared for trial on July 16, 2014, before the Honorable Barbara A. McDermott. However, Appellant requested that a suppression motion be heard even though none had been filed. The court allowed the defense to raise a suppression motion orally, in which Appellant argued that the search warrant obtained by Detective Davis was limited to ballistics evidence and proof of residency and did not include the DVR. The trial court permitted the Commonwealth to present its case, while holding the suppression motion under advisement. Following Detective Davis' testimony concerning the discovery of the DVR, the court denied the suppression motion and permitted the detective to testify regarding the video recording as it was shown in court.

***Commonwealth v. Zepprinans***, [No. 2407 EDA 2014, unpublished memorandum at 2-3 (Pa.Super. filed July 6, 2015)].

PCRA Court Opinion, filed May 4, 2017, at 1-3 (footnotes deleted)

Appellant raises the following issues for our review:

I.   **[DID] THE TRIAL JUDGE [COMMIT] ERROR BY DENYING APPELLANT'S PCRA [PETITION] ON MAY 4, 2016, WHICH RAISED THE ISSUES OF JUDICIAL MISCONDUCT AND INEFFECTIVE ASSISTANCE OF COUNSEL?**

II.  **[DID] THE TRIAL JUDGE [ABUSE] HER POWERS BY REVIEWING APPELLANT'S PRIOR CRIMINAL**

**HISTORY BEFORE TRIAL, AND [DID] SUCH CONDUCT [AFFECT] DECISIONS MADE DURING APPELLANT'S TRIAL?**

**III.   [WAS TRIAL COUNSEL] INEFFECTIVE FOR FAILING TO CALL A MATERIAL EXCULPATORY WITNESS TO TESTIFY, ESPECIALLY SINCE THAT WITNESS WAS PRESENT AT TRIAL AND WILLING TO TESTIFY?**

**IV.   [WAS TRIAL COUNSEL] INEFFECTIVE FOR NOT REQUESTING THE TRIAL JUDGE [TO] RECUSE HERSELF FOR IMPROPERLY REVIEWING APPELLANT'S PRIOR CRIMINAL HISTORY PRIOR TO TRIAL AND [WAS COUNSEL] INEFFECTIVE FOR NOT ADVISING APPELLANT THAT A RECUSAL COULD BE REQUESTED?**

**V.    [WAS TRIAL COUNSEL] INEFFECTIVE FOR FAILING TO RAISE A SUFFICIENCY OF EVIDENCE CLAIM, EITHER IN A POST VERDICT MOTION OR ON DIRECT APPEAL?**

**VI.   [WAS TRIAL COUNSEL] INEFFECTIVE FOR NOT REQUESTING THE SUPPRESSION OF THE SECOND STATEMENT MADE BY THE ALLEGED VICTIM, WHICH WAS APPARENTLY MADE UNDER DURESS?**

Appellant's brief at 4-5.

Our scope and standard of review of decisions denying relief pursuant to the PCRA is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. *Commonwealth v. Chmiel*, 173 A.3d 617, 624 (Pa. 2017). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court. However, this Court applies a *de novo* standard of

review to the PCRA court's legal conclusions." ***Commonwealth v. Spotz***, 18 A.3d 244, 259 (Pa.2011) (citations omitted).

In his first two issues, Appellant contends the trial judge should have recused herself from his criminal trial because she had reviewed his prior record during a pre-trial hearing at which Appellant entertained the Commonwealth's offer of five to twenty years' incarceration in exchange for his plea of guilty. Specifically, the purpose of the review was to ensure a knowing and intelligent plea by advising Appellant of his sentencing exposure should he instead proceed to trial. These issues are waived.

"To be eligible for relief under [the PCRA], the petitioner must plead and prove by a preponderance of the evidence ... [t]hat the allegation of error has not been previously litigated or waived." 42 Pa.C.S.A. § 9543(a)(3). "[A]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S.A. § 9544(b). "At the collateral review stage, allegations of trial court error are waived, since they were not raised at the first opportunity for review." ***Commonwealth v. Rush***, 838 A.2d 651, 660 (Pa. 2003) (citation omitted).

Here, Appellant could have raised these issues before or during trial but failed to do so. Therefore, the issues are waived, and he is not eligible for relief on either basis on collateral review. ***See*** 42 Pa.C.S.A. § 9543(a)(3).

Appellant's remaining claims assert that his trial counsel was ineffective. Generally, to obtain relief on a claim of ineffective assistance of counsel, a

petitioner must plead and prove that (1) the underlying claim is of arguable merit; (2) counsel's performance lacked a reasonable basis; and (3) the ineffectiveness of counsel caused him prejudice. *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987). If a petitioner fails to prove by a preponderance of the evidence any of the *Pierce* prongs, 527 A.2d at 975, the court need not address the remaining prongs. *Commonwealth v. Fitzgerald*, 979 A.2d 908, 911 (Pa. Super. 2009).

Counsel is presumed to have rendered effective assistance of counsel. *Commonwealth v. Montalvo*, 114 A.3d 401, 410 (Pa. 2015). We have explained that trial counsel cannot be deemed ineffective for failing to pursue a meritless claim. *Commonwealth v. Loner*, 836 A.2d 125, 132 (Pa.Super. 2003) (*en banc*). "We need not analyze the prongs of an ineffectiveness claim in any particular order. Rather, we may discuss first any prong that an appellant cannot satisfy under the prevailing law and the applicable facts and circumstances of the case." *Commonwealth v. Johnson*, 139 A.3d 1257, 1272 (Pa. 2016) (citing *Commonwealth v. Albrecht*, 720 A.2d 693, 701 (Pa. 1998)).

First, Appellant contends trial counsel ineffectively failed to file a motion for recusal after the judge, who sat as finder of fact at his non-jury trial, had reviewed his prior record during a pre-trial hearing. A party seeking recusal bears the burden of producing evidence to establish bias, prejudice, or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially. *Commonwealth v. Watkins*, 108 A.3d 692, 734 (Pa. 2014)

(citing **Commonwealth v. Hutchinson**, 25 A.3d 277, 319 (Pa. 2011)). Appellant's claim does not meet this standard.

Knowledge of a defendant's criminal history, alone, does not automatically disqualify a jurist from hearing a case. It is where, instead, "circumstances exist showing a continuing or recurring bias against a particular defendant or a class of cases, the trial judge should be disqualified." **Commonwealth v. Bryant**, 476 A.2d 422, 427 n. 1 (Pa.Super. 1984). **See also Commonwealth v. Boyle**, 447 A.2d 250, 252 (Pa. 1982) ("The mere participation by the presiding judge in an earlier stage of the proceeding neither suggests the existence of actual impropriety nor provides a basis for a finding of the appearance of impropriety.").

Appellant argues that the trial judge allowed her knowledge of his criminal record, which included sex crimes against children, to skew her perception of a video the Commonwealth offered to prove Appellant fired gunshots at the victim. According to Appellant, the video was too dark to identify either what caused the "flashes" depicted or who was responsible for them. The judge, sitting as finder of fact, however, stated she had no doubt from the video that it was Appellant holding the gun. N.T. 7/17/14 at 7. Moreover, the judge found that the flashes combined with the reaction of those nearby, who scattered immediately, were consistent with the firing a gun, and she deemed the victim credible when he testified Appellant fired

shots at him during this episode.[3]  By all appearances, Judge McDermott engaged in an objective assessment of the evidence in making her factual findings, such that we perceive no indication of bias or partiality in her determination.

Appellant also points to the trial judge's pretrial colloquy in anticipation of Appellant's guilty plea as evincing her bias against Appellant as a sex offender.  Therein, the court acknowledged Appellant's "long record" comprising "a lot of sex cases, sex charges there[,]" as well as a conviction for endangering the welfare of a child.  N.T. 7/16/14, at 7, 10, 11.  Subsequent judicial comments during sentencing reinforce the presence of bias during trial, Appellant maintains, as the judge stated "I react, and I have to calm down and do this dispassionately, but I can't ignore the fact I react to the fact not only that you had the gun when you shouldn't have had a gun, but you were on house arrest."  N.T., 7/17/14 at 36.

From this record, Appellant makes the sweeping accusation that Judge McDermott was incapable of assessing the evidence in an impartial manner

---

[3] In the victim's initial stationhouse statement, he recanted his previous identifications of Appellant as the person who shot at him.  He returned to his original account 40 minutes later, admitting to investigators he did not tell the truth in the first statement because he was scared.  N.T. 7/16/14, at 58, 79-83.  It was within the exclusive province of the trial judge as finder of fact to deem the victim's identifications of Appellant credible despite his recantation, which he, in any event, disavowed in both his second statement and his trial testimony.  *See Commonwealth v. Brown*, 52 A.3d 1139, 1168 (Pa. 2012) (deferring to credibility determinations of fact-finder, who observed witnesses recant earlier accounts of crime and assert explanations for inconsistent statements under vigorous cross-examination).

once she learned of Appellant's prior sex crimes, primarily because she is a female jurist:

> These are indeed the exact conditions under which any female, even Judge Barbara McDermott, could possibly, and in this case, did become emotionally inflamed and biased against the defendant, Mr. Zepprinans. The trial judge, having full knowledge of the defendant's "long record," many sex charges and Endangering the Welfare of a Child, developed a bias[ed] opinion against the defendant, and the fact that the defendant was convicted on Endangering the Welfare of a Child, would further raise the ire of anyone with the natural instincts to protect a child, including Judge McDermott.

Appellant's brief at 19.

Contrary to Appellant's argument, the remarks of Judge McDermott reflect not a biased disposition against Appellant but, instead, proper contemplation of both the court's pretrial duty to colloquy a defendant on possible increased sentencing exposures should he choose trial over a negotiated plea offer and its post-trial duty to engage in dispassionate consideration of aggravating factors during sentencing. Neither set of comments so much as suggests, let alone establishes, that the judge harbored bias or ill-will while she sat as finder of fact in Appellant's criminal trial, and Appellant points to no instance during pre-trial, trial, or sentencing where the trial judge exhibited a bias. Accordingly, we discern no arguable merit to Appellant's ineffectiveness claim based on counsel's failure to file a motion for recusal.

Next, Appellant claims trial counsel ineffectively failed to call Tanya Conover as a defense witness, even though Ms. Conover was present in court

and, according to her PCRA affidavit, available to testify that "at know [sic] time [Appellant] was in possession of a gun. At know [sic] time I never seen [Appellant] shoot a gun." PCRA Petition, Exhibit A. The following legal principles apply.

> "To be entitled to relief on a claim of ineffectiveness for failure to call a witness, [an] appellant must demonstrate [that]: the witness existed, was available, and willing to cooperate; counsel knew or should have known of the witness; and the absence of the witness's testimony prejudiced [the] appellant." ***Commonwealth v. Birdsong***, [24 A.3d 319, 334 (Pa. 2011) (citing ***Commonwealth v. Fletcher***, 561 Pa. 266, 750 A.2d 261, 275 (2000)). A PCRA petitioner cannot succeed on such a claim if the proposed witness' testimony "would not have materially aided him.

***Commonwealth v. Johnson***, 139 A.3d 1257, 1284 (Pa. 2016). "A failure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves matters of trial strategy." ***Commonwealth v. Auker***, 681 A.2d 1305, 1319 (Pa. 1996).

Appellant contends that counsel's failure to call Ms. Conover to the stand prejudiced his defense, for she was a material witness who was "on the porch when the alleged shooting incident is said to have occurred on July 11, 2013." Appellant's brief at 30. Given the shooting victim's inconsistent stationhouse statements as to the identity of the person who shot him, Conover's testimony would have aided his defense, Appellant maintains.

The PCRA court observes, however, that Conover's affidavit stops short of saying Appellant did not shoot at the victim. Instead, the court opines, the affidavit is limited to the generic allegation that Conover never saw Appellant

possess or fire a gun. Significantly, nowhere does Conover say when she saw Appellant or whether she was present at the scene when shots were allegedly fired.

When viewed against the backdrop of compelling evidence, the PCRA court continues, Conover's proposed testimony as it appears in her affidavit would not have materially aided Appellant:

> The Commonwealth presented compelling evidence that [Appellant] shot at the victim from his porch. The victim identified [Appellant] as the shooter.[6] When police first encountered [Appellant] after the shooting, his clothing matched the description the victim had provided. Surveillance video from the [Appellant's] home showed him on the porch at the time of the shooting. Based on the flashes of light and the [Appellant's] movement on the video, the video conclusively established that he had fired a gun. Finally, police discovered a 32-caliber FCC on the ground near the porch.
>
> ---
>
> [6] Although the victim initially failed to identify [Appellant during the first part of his stationhouse interview], he stated that he failed to do so because he was afraid.
>
> ---

PCRA Court Opinion, 5/4/17 at 7-8.

It was Appellant's burden to demonstrate there was a reasonable probability that the outcome of his trial would have been different had counsel called Ms. Conover to testify. Here, the PCRA judge, who had presided over Appellant's non-jury trial, observed that she had found incriminating both the security video and the victim's testimony, both of which were vigorously contested at trial. Critically, Ms. Conover's vague affidavit, devoid of specificity with respect to time and place, never directly addressed this

- 12 -

evidence implicating Appellant as the person who fired shots at the victim from the porch. Under this record, Appellant has failed to show the PCRA court erred or abused its discretion in dismissing his petition without a hearing, such that we will not disturb the court's ruling on this issue.

In Appellant's next ineffective assistance of counsel claim, he argues counsel should have raised a sufficiency of the evidence claim either in a post-trial motion for acquittal or on direct appeal given the Commonwealth's failure to prove the identity of the shooter.

When an appellant complains that a conviction is infirm due to lack of sufficient evidence, we review such claims under the following standards:

> The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

> *Commonwealth v. Nahavandian*, 849 A.2d 1221, 1229–30
> (Pa.Super. 2004) (citations omitted).   Furthermore, when
> reviewing a sufficiency claim, our Court is required to give the
> prosecution the benefit of all reasonable inferences to be drawn
> from the evidence.   *Commonwealth v. Robinson*, 817 A.2d
> 1153, 1158 (Pa.Super. 2003), *quoting Commonwealth v.*
> *Widmer*, [744 A.2d 745 (Pa. 2000)].   However, "the inferences
> must flow from facts and circumstances proven in the record, and
> must be of such volume and quality as to overcome the
> presumption of innocence and satisfy the jury of an accused's guilt
> beyond a reasonable doubt."   *Id.*, *quoting Commonwealth v.*
> *Scott*, 597 A.2d 1220, 1221 (Pa. 1991).   "The trier of fact cannot
> base a conviction on conjecture and speculation and a verdict
> which is premised on suspicion will fail even under the limited
> scrutiny of appellate review."   *Id.*

*Commonwealth v. Matthews*, 870 A.2d 924, 928 (Pa.Super. 2005).

After a thorough review of the record, we conclude that even if prior counsel had raised a sufficiency challenge in either a post-trial acquittal motion or a direct appeal, the challenge lacks merit.   Viewed in a light most favorable to the Commonwealth as verdict winner, the evidence recounted above proved beyond a reasonable doubt that it was Appellant who aimed a gun and fired shots at the victim without justification.   Specifically, the victim implicated Appellant in his 911 call, in his complaint to the investigating officer, during the second part of his stationhouse interview with police, and on the witness stand at Appellant's trial.   Even if the trial judge had not viewed the video as corroborative of the victim's accusation, she would still have been free to accept the victim's testimony as sufficient to prove Appellant's guilt. *See Commonwealth v. Johnson*, --- A.3d ----, 2018 Pa.Super. 40, ** 4-6 (holding uncorroborated testimony of a single witness sufficient to sustain

conviction so long as testimony addresses every element of crime charged); ***Commonwealth v. Filer***, 846 A.2d 139, 141–142 (Pa.Super. 2004) (uncorroborated testimony of a victim, if believed by the trier of fact, is sufficient to convict, despite contrary evidence from the defense)

As discussed, however, the victim's testimony was substantiated by Appellant's home security video depicting Appellant holding an object from which flashes emanated, causing people to jump around and scatter immediately from the porch. The following morning, investigators collected a fired cartridge casing near the porch while executing a search warrant.

Based on this evidence, the court's finding that Appellant fired shots at the victim was a reasonable one. Hence, as there is no merit to the underlying sufficiency challenge Appellant levels, we conclude the PCRA court did not err when it rejected Appellant's ineffective assistance of counsel claim as lacking arguable merit.

Finally, Appellant contends counsel was ineffective for failing to object to or move to suppress the victim's second statement implicating Appellant as the person who shot at him. Specifically, the victim recanted his initial 911 and crime scene accusations of Appellant when he provided his first statement to police at the stationhouse. Investigators placed the victim in a room and closed the door for approximately 40 minutes before bringing the victim back to resume the interview, at which time they recorded the victim's identification of Appellant as the shooter.

According to Appellant, counsel provided ineffective assistance of counsel when she failed to move for suppression of the victim's statement as the product of coercion, particularly since the victim suffered from mental illness and would have been easily intimidated into giving a false statement to appease investigators. We disagree.

Generally, to have standing to pursue a suppression motion under Pa.R.Crim.P. 581, the defendant's own constitutional rights must have been infringed. **Commonwealth v. Enimpah**, 106 A.3d 695, 698 (Pa. 2014). Here, Appellant fails to identify what constitutional right of his was implicated by the investigators' manner of interviewing the victim. To the extent that Appellant, therefore, seeks to base his ineffectiveness claim on counsel's failure to invoke the constitutional rights of the victim to be free from such an interview, he may not prevail.

If, instead, Appellant's argument is understood as challenging counsel's failure to file a motion *in limine*[4] contesting the admission of the victim's

---

[4] This Court has stated the following regarding motions *in limine*:

> A motion *in limine* is used before trial to obtain a ruling on the admissibility of evidence. It gives the trial judge the opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs, thus preventing the evidence from ever reaching the jury. A motion *in limine* differs from a suppression motion in that a suppression motion is designed to preclude evidence that was obtained in violation of a defendant's constitutional rights, while a motion *in limine* precludes evidence that was constitutionally obtained but which is prejudicial to the moving party.

allegedly unreliable and prejudicial identification, we would still find his argument affords him no relief. Appellant's challenge turns on the credibility and testimonial capacity of the victim, both of which were the subject of vigorous cross-examination conducted by trial counsel in her attempt to expose the victim's testimonial weaknesses. The trial court nevertheless found the victim credible, and the notes of testimony provide support for the court's determination. Therefore, we may not disturb the credibility determinations of the court in this regard.

For the foregoing reasons, judgment of sentence is AFFIRMED.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/25/18

---

***Commonwealth v. Reese***, 31 A.3d 708, 715 (Pa.Super. 2011) (quoting ***Commonwealth v. King***, 689 A.2d 918, 921 (Pa.Super. 1997)).