597 A.2d 1220

**COMMONWEALTH of Pennsylvania**

v.

**Linda SCOTT, Appellant.**

Superior Court of Pennsylvania.

Argued May 22, 1991.

Filed Oct. 17, 1991.

John Agner, Philadelphia, for appellant.

Laurie Magid, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before WIEAND, BECK and HUDOCK, JJ.

BECK, Judge:

This is an appeal from judgment of sentence imposed following a non-jury verdict of guilty on one count of arson and one count of risking catastrophe. Appellant, Linda Scott, challenges the sufficiency of the evidence upon which her convictions are based. For the reasons which follow,

we conclude that the evidence was insufficient to support the verdict. Therefore, we reverse.

■ We preface our discussion by emphasizing that we are fully cognizant of the narrow standard of review by which this court must judge sufficiency claims. The established test is whether, viewing all the evidence admitted at trial, together with all reasonable inferences which can be drawn therefrom, in the light most favorable to the Commonwealth, the jury (or the court as fact-finder) could have properly found that each element of the offense was proven beyond a reasonable doubt. *See Commonwealth v. Jackson,* 506 Pa. 469, 485 A.2d 1102 (1984); *Commonwealth v. Vazquez,* 328 Pa.Super. 86, 476 A.2d 466 (1984). While reasonable inferences must be drawn in the Commonwealth's favor, the inferences must flow from facts and circumstances proven in the record, and must be of "such volume and quality as to overcome the presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt." *Commonwealth v. Clinton,* 391 Pa. 212, 219, 137 A.2d 463, 466 (1958). The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fall even under the limited scrutiny of appellate review. *Commonwealth v. Roscioli,* 454 Pa. 59, 62, 309 A.2d 396, 398 (1973); *Commonwealth v. Garrett,* 423 Pa. 8, 222 A.2d 902 (1966). Based on these principles and despite the strict standard, we conclude that the evidence at trial could not establish the elements of the charged offenses beyond a reasonable doubt.

At trial, the Commonwealth presented the following evidence. A fire marshall, Lieutenant Pelzynski, from the Philadelphia Fire Department testified that he was summoned to the row house where appellant lived with her boyfriend and two children, to investigate the causes of a fire which had occurred there just after midnight on June 22, 1989. The fire had already been extinguished when Lt. Pelzynski arrived. As a result of his examination of the patterns of smoke and heat damage to the house, Lt.

Pelzynski concluded that the fire had started, and was contained, in the second floor rear bedroom of the home. The fire marshall further concluded that the fire originated in the area of the room where the bed had been located. The bed, which had been burning and was removed by firefighters before the fire marshall's arrival, was on front lawn of the property. The mattress and box spring of the bed were damaged by fire and the fire marshall concluded that the damage was the result of an open flame rather than a smoldering fire.

Lt. Pelzynski further reported that, in his opinion, the burn patterns on the bedroom floor indicated that some type of flammable liquid had been on the floor which acted as an accelerant. He also noted that he discovered a container of charcoal lighter fluid in an open kitchen cabinet. Pictures of the bedroom indicated that there was a book of matches on a radiator cover underneath a window in the room. Finally, the fire marshall concluded that the fire was incendiary in nature and had been caused by an "open flame device of an undetermined nature" applied to a flammable or combustible liquid.

The Commonwealth's case also contained the stipulated testimony of one of the firefighters who extinquished the blaze. His testimony as stipulated was that when he arrived he saw appellant's boyfriend, Nathan Williams, standing in the street in front of the property. When the firefighter entered the house, he located the fire in the rear second floor bedroom and the bed was on fire. Later, the firefighter saw appellant Linda Scott arguing with her boyfriend, Nathan Williams. When asked how the fire started, Scott replied, "All I did was take some kerosene, charcoal fluid. I just sprayed a little bit, but that wasn't enough to do anything. Then I left." The fireman saw the same can of lighter fluid in the kitchen cabinet that had been observed by the fire marshall.

Linda Scott testified on her own behalf. She recounted her version of the events of the evening as follows. Scott and her boyfriend, Nathan Williams had been arguing about

his excessive drinking and smoking crack. Williams had been acting in a "crazy," violent manner. Scott warned Williams that she was going to leave the house and take their two year old baby with her. In response, Williams became abusive, grabbing at Scott, calling her names and threatening her. Williams at the time had a broken leg and his leg was in a cast. As a result, he was using crutches which he wielded as weapons during his argument with Scott. Flustered and frightened, Scott took the baby downstairs.

Scott realized that she left her pocketbook, her shoes and the baby's shoes in the bedroom with Williams. Afraid to retrieve them unarmed, she went into the kitchen and grabbed some charcoal lighter fluid because it was "the first thing [she] saw." She stated that her intentions were to defend herself. Scott testified, "If I would have threw it in his face or threw it, just throwing it on him just so he would just, you know, stop him from getting at me." Scott further admitted that she did squirt the lighter fluid at Williams when he swung his crutches at her and that she then went downstairs. Scott testified that in order to collect herself she went outside to her rear yard, leaving the baby on the living room couch. About ten minutes later, Williams was at the rear bedroom window, shouting, "Fire." Scott stated that she did not know how the fire started. She denied putting a match to the lighter fluid or in any way starting the fire herself.

Based on the foregoing, the trial court found appellant guilty of arson and risking catastrophe. The trial court concluded that "Ms. Scott was not believable, and . . . that she did deliberately, wilfully and maliciously set the fire."

We will address appellant's sufficiency claim first with respect to the arson charge. In order to be guilty of arson, the Commonwealth must prove beyond a reasonable doubt that (1) there was a fire, (2) it was maliciously and willfully set, and (3) the defendant was the guilty party. *Commonwealth v. Carthon*, 467 Pa. 73, 354 A.2d 557 (1976); *Commonwealth v. Colon*, 264 Pa.Super 314, 399

A.2d 1068 (1979). Viewing the trial evidence and all legitimate inferences arising therefrom in a light most favorable to the Commonwealth, as we must, we conclude these elements cannot be inferred beyond a reasonable doubt. At best, the Commonwealth proved that the fire at appellant's home originated when an open flame came into contact with a combustible liquid. In addition, based on appellant's admissions at trial and to the firefighter at the scene, the combustible liquid could reasonably be inferred to be charcoal lighter fluid which appellant had squirted in the room, at Nathan Williams, prior to the fire.[1]

The trial court summarized the inculpatory evidence against appellant in the following manner: "The trial testimony placed the defendant inside the premises at the location of the fire moments before the flames. Ms. Scott stated that after she squirted the lighter fluid on Mr. Williams she went downstairs to the backyard. Within 10 minutes, she looked up, saw smoke coming out of the window, the lights had gone out, and Mr. Williams was yelling, 'Fire'." This evidence, coupled with the trial court's disbelief of appellant's denial, apparently convinced the court that guilt was established beyond a reasonable doubt.

We recognize that the Commonwealth may establish the entirety of its case through circumstantial evidence. Indeed, in arson cases this court has recognized that circumstantial evidence frequently is the only evidence attainable. *Commonwealth v. Colon,* 264 Pa.Super. at 324–25, 399 A.2d at 1073. On the other hand, we have cautioned that particular care must be taken in cases where only circumstantial evidence is offered, lest we impermissibly rest a finding of guilt on conjecture. In addition, while "[t]here is no requirement that the Commonwealth exclude all possibility that a third party may have committed the

1. Although all parties appear to assume that the flammable liquid involved in the conflagration was charcoal lighter fluid, there was also uncontradicted evidence that Williams was drinking corn liquor in the bedroom just before the fire started.

crime"[2], we must also guard against "reasoning from circumstances not sufficiently cogent in themselves or as connected, and particularly not sufficiently exclusive of every innocent hypothesis."[3]

In our view, the trial court's verdict cannot stand on this record. First, in large part the conviction rests on the mistaken belief that appellant's version of the story and the trial court's conclusion that it was "self-serving" can substitute for proof in the Commonwealth's case. This court repeatedly has emphasized that the Commonwealth has the never shifting burden to establish each element of the offenses charged beyond a reasonable doubt and that the fact that the court rejects a defendant's explanation is "not a substitute for proof." *Commonwealth v. Peduzzi*, 338 Pa.Super. 551, 557, 488 A.2d 29, 33 (1985).

An analogous case is illustrative. In *Commonwealth v. Trafford*, 312 Pa.Super. 578, 459 A.2d 373 (1983), the defendant was a newly employed maintenance man at an apartment complex at which a fire was reported. The telephone operator who received news of the fire paged the defendant on his beeper and he called back almost immediately. The telephone operator then called the police and the police and firemen were sent to the scene of the fire. When the first fireman arrived, he saw the defendant walking out of the apartment's clubhouse, reporting that he had just extinguished the fire. Defendant had given contradictory stories at the scene and at trial as to his whereabouts at the time he received the call on his beeper. From the contradictory statements and the extremely abbreviated time span, the trial court concluded that defendant in *Trafford* must have responded to the beeper page from a location very close to the fire and that he gave false statements as to his whereabouts at the time of the fire. From these conclusions, the

**2.** *Commonwealth v. Akers*, 392 Pa.Super. 170, 180–81, 572 A.2d 746, 751 (1990).

**3.** *Commonwealth v. Trafford*, 312 Pa.Super. 578, 579–80, 459 A.2d 373, 374 (1983), *quoting Rodriguez v. United States*, 232 F.2d 819, 812 (5th Cir.1956).

trial court found sufficient evidence that defendant had set the fire. This court reversed, stating:

> Appellant's presence at the scene of the fire is certainly insufficient to establish guilt. Nor is the added factor of his apparently false statements as to his whereabouts sufficient to establish a prima facie case. 'A man charged with a crime is not required to explain anything. It is the Commonwealth's obligation to prove guilt.... [I]f the defendant does speak and speaks unconvincingly or self-contradictorily, but the Commonwealth has not made out a prima facie case, a resulting conviction will not be allowed to stand.' The Commonwealth can not use apparent inconsistencies in the appellant's version of the events surrounding the fire to make up for deficiencies in its own case. Of course, appellant's deceptions would lead one to suspect that perhaps mischief was afoot, but his willingness to mislead provides no basis in logic for concluding that he engaged in the deliberate felonious act of arson. While the evidence in the instant case may have cast a degree of suspicion on appellant, it is clear that 'suspicion is never accepted in a court of justice as a substitute for proof.'

*Commonwealth v. Trafford*, 312 Pa.Super. at 582–84, 459 A.2d at 375 (citations omitted).

Likewise, in the instant case, it is impermissible to substitute the trial court's disbelief of appellant's testimony for the presentation of evidence beyond a reasonable doubt that appellant set the fire.

Moreover, considering the entirety of the uncontradicted evidence in the case, parts of which were even relied upon by the trial court in its opinion, it is clear to us that the reasonable inferences to be drawn from this record are equally consistent with the possibility that the fire was set by Williams instead of appellant. It is settled that, although the Commonwealth needn't entirely disprove every conceivable hypothesis consistent with innocence, the Commonwealth's proof must sufficiently "cast doubt on the

equally likely possibility" that a third party committed the offense.   The law is that:

> When two equally reasonable and mutually inconsistent inferences can be drawn from the same set of circumstances, a jury must not be permitted to guess which inference it will adopt, especially when one of the two guesses may result in depriving a defendant of his life or his liberty.

*Commonwealth v. Hubbard,* 472 Pa. 259, 270–71, 372 A.2d 687, 692 (1977), *quoting Commonwealth v. Woong Knee New,* 354 Pa. 188, 221, 47 A.2d 450, 468 (1946).

Here, the trial court accepted that Williams was alone in the bedroom for about ten minutes after Scott had squirted the charcoal lighter fluid.   Leaving the baby in the house, Scott left the house and went out of doors.   Williams had been drinking and also was a crack smoker.   There were matches on the bedroom radiator under a window that had no more connection to Scott than to Williams.   Williams was downstairs and outside the building when the police and firefighters arrived to extinguish the blaze, apparently unharmed and obviously quite capable of mobility.   These circumstances legitimately and reasonably support the inference that Williams, not Scott, either inadvertently or deliberately started the fire in the bedroom.   In addition it is equally reasonable to infer that if appellant had put an open flame to the lighter fluid and then left the room, the flames would have immediately engulfed and even burned Williams, and that ten minutes could not have elapsed before he came to the window to shout "Fire."   The Commonwealth offered no proof sufficient to cast doubt on these inferences.   While the record may have permitted the suspicion that Scott had set the fire, we find no evidence to support that conclusion beyond a reasonable doubt.   Short of that, however, a criminal conviction cannot be upheld.

Finally, we address appellant's claim regarding her conviction for risking catastrophe.   The Commonwealth contends that appellant has waived the sufficiency argument on risking catastrophe.   Appellant's original sufficien-

cy argument was based on the contention that the Common-wealth failed to prove that she started the fire, in effect challenging both convictions on this ground. The Common-wealth argues that the mere fact that appellant squirted the lighter fluid was sufficient for a conviction of risking catas-trophe and that since appellant did not specifically challenge the conviction on that ground in post-verdict motions, her claim is waived. The Commonwealth further argues that even if not waived, the sufficiency argument is meritless because appellant's admitted action of squirting the lighter fluid at Williams is sufficient to support the conviction. We reject these arguments.

The record at trial indisputably indicates that the Com-monwealth's proof on both charges rested on supposed proof that Scott was "the one who started the fire that particular night.... [and] therefore [was] guilty of the charge of arson and risking a catastrophe." Common-wealth's closing argument, Trial Transcript at 55. There-fore, in post-verdict motions the sufficiency argument was framed in terms of a lack of proof that the "defendant started the fire." We consider this challenge adequate to raise the sufficiency argument on both counts, in light of the evidence and arguments at trial. The Commonwealth never intimated, argued or proved that the act of squirting some charcoal lighter fluid alone, without proof that she thereafter intended to and did set the liquid on fire, was sufficient to convict appellant of risking a catastrophe. Whatever may be the merits of this contention by the Commonwealth in another context, this record contained no proof from which the fact-finder could conclude that appel-lant, by squirting the lighter fluid and leaving the room, consciously created a risk of widespread destruction that "expose[d] society to an extraordinary disaster." *Com-monwealth v. Hughes*, 468 Pa. 502, 512, 364 A.2d 306, 311 (1976).

We hold that the Commonwealth's proof at trial was insufficient to support appellant's convictions for arson and risking a catastrophe.

Judgment of sentence reversed and appellant ordered discharged.