J-S08020-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| DARION AKIER EADY, | |
| Appellant | No. 876 WDA 2017 |

Appeal from the Judgment of Sentence entered May 23, 2017,
in the Court of Common Pleas of Erie County,
Criminal Division, at No(s): CP-25-CR-0001496-2016.

BEFORE:  LAZARUS, J., KUNSELMAN, J., and STEVENS, P.J.E.*

MEMORANDUM BY KUNSELMAN, J.:          **FILED MAY 09, 2018**

Darion Akier Eady appeals from the judgment of sentence entered after a jury convicted him of third-degree murder, recklessly endangering another person, possession of an instrument of crime, and firearms not to be carried without a license.[1]  After careful review, we vacate all of his convictions except for the firearm violation, and remand for resentencing on the charge of firearms not to be carried without a license.

Our independent review of the record, viewed in the light most favorable to the Commonwealth, reveals the following:  On July 24, 2015, a house party took place at Brandy Kooker's apartment, located at 230 West 29th Street in Erie, Pennsylvania.  N.T., 1/31/17, at 36-37.  After the gathering grew to

_____

[1] 18 Pa.C.S.A. §§ 2502(c), 2705, 907(a), 6106(a)(1), respectively.

*Former Justice specially assigned to the Superior Court.

approximately 100 people, Kooker's boyfriend, Mario Sanders, decided to shut the party down. Mr. Sanders testified that while attempting to make people leave the premises, he noticed a group of five men standing around a car on the corner. One of the men was a young black male in a white t-shirt, approximately 5'7" or 5'8" in height. The men were approximately thirty yards away when Mr. Sanders observed what looked like a gun on the right hip of the man in the white T-shirt. Immediately after he witnessed this, Mr. Sanders approached the men, requested them to leave, and then went back inside Kooker's apartment. Shortly after returning to the apartment, Mr. Sanders heard gunshots. He did not see who fired the gun. *See* N.T., 1/31/17, at 40-46.

Corporal Royce Smith, a training supervisor and SWAT officer with the City of Erie Police Department, arrived at the 29th Street apartment after receiving a shots fired call. *Id.* at 85. He observed the body of sixteen-year-old Elijah Jackson in the backyard, along with two live rounds and one spent shell casing near the body. Corporal Smith reported that Jackson was not breathing when he arrived, and there was blood coming from the back of his head. *Id.* at 88. Dr. Eric Vey, a forensic pathologist, testified that Jackson died from a gunshot wound to the back of the head and was killed and incapacitated immediately when a bullet severed his brain stem. *Id.* at 120.

A security camera located at 231 Goodrich Street, which adjoins 230 West 29th Street, captured two men on surveillance footage. *Id.* at 98. The police posted the footage on Facebook in an attempt to identify the two

suspects. Mr. Sanders identified the person designated "Suspect #1" as the person he witnessed with the gun on the night of July 24, 2017. Various tipsters identified Suspect #1 as Darion Eady and/or Chase Bucks. During an interview with Captain Rick Lorah of the City of Erie Police Department, Eady himself admitted that he was suspect #1 on the surveillance footage, that he attended the party, and that he went by the nickname "Chase Bucks." *See* N.T., 1/31/17, at 70-77.

In the surveillance footage, Suspect #2 and Eady appeared in the frame together. N.T., 1/31/17, at 99. Captain Lorah testified that it appeared Suspect #2 had a gun in his right pocket. N.T., 2/1/17, at 42. The video did not show that Eady was in possession of a firearm. *Id.* at 43. Suspect #2 then left the frame. After some lapse in time, Suspect #2 returned to the video screen, and he appeared to no longer have the weapon. *Id.* at 42-43.

Police Officer Joshua Allison, of the City of Erie Police Department, discovered a .22 caliber Smith & Wesson handgun under a staircase landing in the area where Eady and Suspect #2 were seen in the video. *Id.* at 99. The staircase was located in the direction Suspect #2 travelled when he walked out of the video surveillance coverage. *Id.* at 101. The handgun contained at least four sets of DNA, one of which was positively linked to Eady, and one fingerprint that was determined *not* to belong to Eady. *Id.* at 14; N.T., 1/31/17, at 156.

Additionally, a second gun – a German Sport Gun – was recovered several blocks away near 2912 Myrtle Street under a piece of plywood behind

a shed. N.T., 1/31/17, at 156-157. This gun was also a .22 caliber. *Id.* at 158. At the scene, two live rounds, four spent shell casings, and one spent round were recovered. *Id.* at 175-178. The two live rounds were .22 caliber. *Id.* at 176. Captain David Burlingame of the City of Erie Department, a firearm toll mark examiner, testified at trial that two of the spent shell casings he examined were discharged from the Smith & Wesson pistol, and the additional two spent shell casings were fired from the German Sport Gun. *Id.* at 177-178. Captain Burlingame could not determine which firearm discharged the bullet that was retrieved from Elijah Jackson's body, although it too was a .22 caliber round. *Id.* at 175.

Following the close of evidence and testimony, the jury convicted Eady on the above-enumerated charges. On March 14, 2017, Eady filed a post-trial motion, in which he sought a new trial due to juror misconduct.[2] The trial court took testimony regarding this issue on two separate dates, and subsequently denied the motion. On May 23, 2017, the trial court sentenced Eady to an aggregate term of 23 years and 8 months to 47 years and 6 months of incarceration, followed by 10 to 20 months of probation. This timely appeal follows the denial of Eady's post-sentence motion asking for a modification of

---

[2] After the trial, Eady claimed that his friend, Roshina Glover, overheard the only African-American juror say she "grew up" "down the street from [the victim's] family," that she "knew [his] family", and that the victim "didn't deserve that." Glover also stated that she saw the African-American juror and the family of the victim give each other a "thumbs up gesture" on the way out of the courthouse. Trial Court Opinion, 9/18/17, at 6.

sentence, a new trial, and an arrest of judgment. Both Eady and the trial court have complied with Pa.R.A.P. 1925.

Eady raises two issues on appeal:

1. Whether the Commonwealth failed to present sufficient evidence to prove [Eady's] guilt beyond a reasonable doubt as to the convictions for murder of the third degree, recklessly endangering another person, possession of instruments of crime and firearms not to be carried without a license?

2. Whether the trial court abused its discretion in denying [Eady's] post-trial motion for a new trial?

Eady's Brief at 3.

First, Eady argues that there was insufficient evidence presented from which the jury could conclude beyond a reasonable doubt that Eady fired the gun responsible for killing Jackson. Eady contends that "the Commonwealth failed to present one single shred of evidence that connected [Eady] with the death of Elijah Jackson." Eady's Brief at 11. In his brief, Eady repeatedly points to the trial court's rationale for upholding the verdict which, he claims, contains statements "totally contradicted by the record." Eady's Brief at 14. We agree.

In reviewing a challenge to the sufficiency of the evidence, we must determine whether viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt.

*Commonwealth v. Lewis*, 911 A.2d 558, 563-64 (Pa. Super. 2006). When reviewing the evidence adduced at trial, the court may not weigh the evidence and substitute its judgment for that of the fact-finder. *Commonwealth v. Derr*, 841 A2d 558, 560 (Pa. Super. 2004). The fact-finder, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. *Commonwealth v. Hunzer,* 868 A.2d 498, 505 (Pa. Super 2005).

However, if the facts relied on by the fact-finder are so weak or inconclusive that, as a matter of law, no probability of fact may be drawn from the circumstances, then the conviction in question cannot stand. *Commonwealth v. Kim*, 888 A.2d 847, 851-52 (Pa. Super. 2005) (citations omitted). Stated differently, "[a]lthough the Commonwealth does not have to establish guilt to a mathematical certainty and may in the proper case rely wholly on circumstantial evidence, the conviction must be based on more than mere suspicion or conjecture." *Commonwealth v. Thomas*, 561 A.2d 699, 704 (Pa. 1989) (citations omitted).

In this case, Eady challenges his conviction for third degree murder. Third degree murder is defined as all other murders that are not first or second degree murder:

> Third degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice. Malice is not merely ill-will but, rather, wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty. Malice may be inferred from the use of a deadly weapon on a vital

part of the victim's body. Further, malice may be inferred after considering the totality of the circumstances.

***Commonwealth v. Garland***, 63 A.3d 339, 345 (Pa. Super. 2013) (citation omitted).

The trial court provided the following rationale in support of Eady's third-degree murder conviction:

> [Eady] admitted attending the party and that he was suspect [#1] in the surveillance video. [Eady's] conduct on the video evinced his criminal intent. He is shown brandishing a handgun and appears to be stalking someone. He was holding the weapon consistent with a criminal intent to use it. He clearly was not engaged in any innocent endeavor. While [Eady] does not have the burden of proof, he did not proffer or argue to the jury any exculpatory explanation for his conduct on the video.
>
> The .22 caliber handgun linked to the gun that killed Jackson was found close to where [Eady] was seen in the video. Jackson's body was in the driveway/backyard near where [Eady] is seen in the video armed and ready to fire.
>
> The Smith & Wesson gun found not far from the victim's body had [Eady's] fingerprint near the trigger and his DNA on it. The location of [Eady's] fingerprint near the trigger created an inference [Eady] pulled the trigger. The gun was a black handgun consistent with what was seen on video. The handgun was .22 caliber and the bullet that killed the victim was a .22 caliber bullet. The spent .22 casings near the dead body were traced to the gun containing [Eady's] fingerprint and DNA.
>
> [Eady] matched the description of the young man who had such a gun at the party as identified by Sanders. In a police interview, Kooker and Sanders identified the young man with a gun at the party as Chase Bucks from Facebook. Separately, [Eady] admitted Chase Bucks is his Facebook profile, that he was at the party, and he was suspect [#1] in the neighboring video.

Trial Court Opinion, 9/18/17, at 9-10.

If the record supported the facts as summarize by the trial court above, we would agree that sufficient evidence existed to convict Eady of third-degree murder. However, the trial court's version of the facts contained several errors and omissions, which undermine its sufficiency analysis in this case. First, the court stated, "The .22 caliber handgun linked to the gun that killed Jackson was found close to where [Eady] was seen in the video." Although a gun was found in this location, the record showed that two guns were found, and neither could be linked to the murder. Second, the court stated that Eady was seen in the video "armed and ready to fire." The video did not show Eady to be armed; thus, Eady did not appear "ready to fire." To the contrary, a second suspect, Suspect #2, was armed. The trial court never mentioned that a second suspect was also in the video near the location where the victim was found. Third, the court stated that Eady's fingerprint was found near the trigger on the Smith and Wesson gun and that the location of this fingerprint "created an inference [that Eady] pulled the trigger." The record revealed, however, that the only fingerprint recovered was determined *not* to belong to Eady; thus, there can be no inference that Eady pulled the trigger. Fourth, the court noted that Eady's DNA was on this gun. Although this was true, the trial court never mentioned that the DNA of three other people was also found on this gun. Based on these numerous and significant inconsistencies, we cannot accept the trial court's rationale for concluding that there was sufficient evidence to convict Eady on the charge of third-degree

murder. Rather, after our own review of the record as cited above, we are compelled to conclude that the Commonwealth did not establish its heavy burden of "beyond a reasonable doubt" needed to sustain a conviction.

In order for the jury in this case to have concluded that Eady was guilty of third-degree murder, the jury would have had to determine that Eady was the person who killed Jackson. Under the applicable standard of review, we must leave issues of witness credibility to the jury. ***See, Hunzer supra.*** Following this principle, we must accept Mr. Sander's testimony as fact. However, his observation that Eady possessed a gun earlier that night is not enough to sustain a conviction of third-degree murder.

Our Supreme Court has held that a criminal defendant is entitled to acquittal if the facts adduced against him are susceptible to more than one reasonable interpretation. ***Commonwealth v. Woong Knee New***, 47 A.2d 450, 455 (Pa. 1946) (citation omitted). In ***Woong Knee New***, our Supreme Court concluded that that the defendant had been erroneously convicted on circumstantial evidence for criminal homicide. The Court held that the Commonwealth at most proved that the defendant had an opportunity to commit murder, but it failed to prove that such opportunity was exclusively that of the defendant's, and that no one else could have committed the crime. ***Id.*** at 467. In that case, all the circumstances the Commonwealth proved were consistent with the theory that some unknown person committed the murder. ***Id.***

Similarly, in this case, it is entirely feasible that another person other than Eady, fired the Smith and Wesson. Furthermore, it is also equally likely that the German Sport Gun was the weapon responsible for killing Jackson.

> When two equally reasonable and mutually inconsistent inferences can be drawn from the same set of circumstances, a jury must not be permitted to guess which inference it will adopt, especially when one of the two guesses may result in depriving a defendant of his life or his liberty.

*Commonwealth v. Hubbard*, 372 A.2d 687, 692 (Pa. 1977). When there is an equally likely possibility someone other than the defendant committed the offense, the Commonwealth's proof must sufficiently cast doubt on the alternative scenario. *Commonwealth v. Scott*, 597 A.2d 1220, 1224 (Pa. Super. 1991). The Commonwealth's proof failed to do so in this case.

Here, Mr. Sanders testified that he observed Eady in possession of a handgun on the night to the party. Two weapons were fired that night, both of which were .22 calibers – a Smith & Wesson and German Sport Gun. Spent shell casings from both weapons were recovered from the scene. The .22 caliber bullet that killed Jackson was not traceable to either weapon. In addition, as we previously noted, Eady's fingerprint was ***not*** found on the Smith & Wesson. Although his DNA was found on the gun, three other sets of DNA and one fingerprint, not belonging to Eady, were on the Smith & Wesson. As the Commonwealth's DNA expert testified upon cross-examination, despite the presence of Eady's DNA on the gun, it could not be determined when he handled it or how he did so; the presence of Eady's DNA

established only that at some unknown point in time, Eady had come into contact with it. Finally, video surveillance showed Eady and Suspect #2 in the alley behind 230 West 29th. Eady appeared to be unarmed while Suspect #2 appeared to have a gun in his pocket. Suspect #2 left the frame and then returned without the weapon.

Given this evidence, the circumstances the Commonwealth presented to the jury legitimately and reasonably support the inference that Suspect #2 or some person, other than Eady, fired the .22 caliber handgun that killed Jackson. In addition, it is equally reasonable to conclude that Jackson was killed by a bullet fired from the German Sport Gun, which the record did not link to Eady in any manner. The Commonwealth offered no proof sufficient to cast doubt on these inferences. While the record permitted the *suspicion* that Eady shot Jackson, we find the evidence was insufficient to support this conclusion beyond a reasonable doubt. Short of that, a criminal conviction cannot be upheld. **Lewis**, **supra**.

Our analysis on the murder charge equally applies to the charges of recklessly endangering another person, and possession of instruments of crime. We apply the aforementioned reasoning to these charges. The trial court's conclusions that the Commonwealth met its evidentiary burden for these offenses is valid only if the record evidence supported the court's factual summary as to third-degree murder. It did not. Thus, we likewise conclude that the evidence introduced by the Commonwealth was insufficient to support these convictions.

We reach a different conclusion with regard to Eady's conviction for firearms not to be carried without a license. Pursuant to 18 Pa. C.S.A. §6106(a)(1), a person is guilty of this offense if the Commonwealth shows that he was in possession of a concealed firearm on his person, without a valid license. When viewing the evidence in the light most favorable to the Commonwealth, the Commonwealth established that Eady, at some point during the night of the incident, was in possession of a firearm. In addition, the Commonwealth introduced evidence that Eady did not have a license to carry a firearm. Thus, the evidence presented by the Commonwealth sufficiently established that Eady possessed a firearm without a valid license on the night in question.

In summary, we are compelled to conclude that the evidence presented at trial, when carefully reviewed in its entirety, was too indeterminable to support a guilty verdict for third degree murder, recklessly endangering another person, and possession of instrument of a crime, and thus, was insufficient as a matter of law. Having reached this conclusion, after careful and meticulous review of the record, we find that the verdict of the jury was based on speculation and conjecture and cannot stand. *Woong Knee New, supra.* With respect for the conviction for the offense of firearms not to be carried without a license, we affirm.

We now turn to Eady's claim that the trial court abused its discretion when it denied his post-trial motion for a new trial due to juror misconduct. Eady claimed that after the jury reached a verdict, his friend, Roshina Glover,

- 12 -

discovered that one of the jurors had a prior relationship with Jackson's family. Eady alleges that the juror failed to disclose this preexisting relationship in *voir dire*.

The trial court granted Eady two days of hearings to explore the merits of this claim. At the hearing, when asked whether she knew the juror, Jackson's mother testified that she had never seen or interacted with the juror before the trial and never lived down the block from her. Other family members of Jackson provided similar testimony. The trial court ultimately denied the motion, stating that "after careful review of Glover's testimony and a thorough analysis of the surrounding circumstances, this court does not find Glover's testimony credible given her bias and inconsistencies, the lack of any corroboration, the physical evidence which contradicts her purported observations and the rebuttal testimony from the victim's family." Trial Court Opinion, 9/18/17, at 15. The trial court provided a detailed discussion of why it did not believe the evidence of juror misconduct presented by Eady.

A new trial should only be granted in instances of juror misconduct when it is clear that improper conduct by a juror has occurred, and is evidenced by competent testimony. ***Johnson v. Frazier***, 787 A.2d 433, 436 (Pa. Super. 2001). The trial court's determination that no juror misconduct occurred here was based on credibility determinations and physical evidence presented at a two-day evidentiary hearing. We cannot disturb this credibility determination, when, as here, it is supported by the record. ***Commonwealth v. Wholaver,*** 177 A.3d 136, 180 (Pa. 2018)*.*

Accordingly, the judgment of sentence for firearms not to be carried without a license is affirmed; the judgment of sentence for third degree murder, reckless endangerment, and possession of instruments of a crime are vacated, and the case is remanded for resentencing. **_See Commonwealth v. Goldhammer_**, 517 A.2d 1280, 1283 (stating generally if appellate court upsets sentencing scheme, then remand for resentencing is warranted).

Judgment of sentence affirmed in part and vacated in part. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judge Lazarus joins in this Memorandum.

P.J.E. Stevens concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/9/2018

- 14 -