**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALEXIS NAKIA TODD, | : | |
| | : | |
| Appellant. | : | No. 3448 EDA 2018 |

Appeal from the Judgment of Sentence Entered, October 30, 2018,
in the Court of Common Pleas of Delaware County,
Criminal Division at No(s): CP-23-CR-0007253-2017.

BEFORE: BOWES, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY KUNSELMAN, J.:        **FILED AUGUST 13, 2019**

Alexis Nakia Todd appeals from the judgment of sentence imposed following a bench trial where the trial court found her guilty of possessing drug paraphernalia,[1] possession of a controlled substance,[2] obstruction of justice,[3] and conspiracy to possess a controlled substance with intent to deliver.[4] Todd appeals only her conviction for conspiracy. Upon review, we affirm.

The trial court set forth the pertinent facts as follows:

On October 25, 2017 Officer Christopher Craig of the Borough of Lansdowne Police Department was on duty in uniform and operating a marked patrol vehicle. At about 4:30 p.m. he stopped

---

[1] 35 Pa.C.S.A. § 780-113 (a)(32).

[2] 35 Pa.C.S.A. § 780-113 (a)(16).

[3] 18 Pa.C.S.A. § 5104.

[4] 18 Pa.C.S.A. § 903.

a black Honda. The stop came to fruition in a parking lot on East Baltimore Avenue. After the Honda came to a stop Officer Craig watched [Todd], the passenger, exit the vehicle from the passenger's side and walk around toward the driver's side. At the same time the driver climbed from the driver's seat to the passenger side. Officer [Craig] asked the driver, James Hollis, to get back into driver's seat [and] he did.

Officer Craig called for back-up and asked Hollis for his license, registration and proof of insurance. Hollis appeared to be nervous and was fidgeting. When Officer Craig secured the documents he returned to his patrol vehicle to run the information through the CLEAN system. Two officers arrived to assist Officer Craig.

Officer Jonathan Downs went to the driver's side of the vehicle after conferring with Officer Craig. Hollis was sitting half-way out of the driver's seat. He was reaching into the front and back seats of the passenger compartment. It appeared as if he was trying to conceal something. Officer Downs tried to restrain Hollis as he threw a green vial into bushes that were nearby. A struggle ensued.

[Todd], who was outside the vehicle, came around to the driver's side and got in between Officer Downs and Hollis as the Officer tried to handcuff Hollis. Officer Craig watched from the patrol vehicle as Officer Downs struggled with Hollis and [Todd]. He left his patrol vehicle and tried to pull [Todd] off of Officer Downs. [Todd] was aggressive. After a brief struggle Officer Craig and [Todd] both fell to the ground and Officer Craig was able to handcuff [Todd].

[Todd] was placed in a patrol vehicle for transport. Her purse, which was on the floor of the passenger side of the Honda was brought along with her to the police station. In a search at the police station a Mason jar containing 10.44 grams of marijuana was found in the purse. At the scene of the stop Hollis was handcuffed by Officer Downs with the assistance of a third officer. After Hollis was handcuffed a green vial containing twenty-six thirty-milligram Oxycodone pills was recovered from the bushes. Hollis had two green vials containing marijuana on his person. Fifty unopened pink vials were in the Honda's passenger-side glove compartment. Paraphernalia including an e-cigarette and a clear vial containing marijuana residue and a white pill were in the passenger compartment of the vehicle. Hollis had $514.00 on his person and Hollis and [Todd] were each carrying two cell phones.

Trial Court Opinion, 1/15/19, at 4-6 (citations omitted). Todd was arrested and charged with various offenses.

Following a bench trial, the court found Todd guilty of, *inter alia*, conspiracy to possess marijuana with the intent to deliver. On this charge, the trial court sentenced Todd to time served (one day) to twenty-three months of imprisonment.

Todd timely appealed. Todd and the trial court complied with Pa.R.A.P. 1925.

Todd raises the following single issue on appeal:

Whether the evidence was insufficient to sustain the conviction for Conspiracy where the Commonwealth failed to prove beyond a reasonable doubt that [Todd] (1) entered into an agreement with anyone to commit a crime or (2) shared any kind of criminal intent to do so?

Todd's Brief at 5.

Todd contends that the evidence was insufficient to support her conviction for conspiracy. Specifically, Todd argues that the Commonwealth failed to prove beyond a reasonable doubt that she 1) entered into an agreement with anyone to commit a crime; or 2) shared any kind of criminal intent to do so. Thus, according to Todd, her judgment of sentence for conspiracy should be reversed. Todd's Brief at 8. We disagree.

In reviewing a claim based upon the sufficiency of the evidence, this Court:

must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom when viewed in the

light most favorable to the verdict winner, are sufficient to support all elements of the offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011) (citations omitted). However, "the inferences must flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of an accused's guilt beyond a reasonable doubt." *Commonwealth v. Scott*, 597 A.2d 1220, 1221 (Pa. Super. 1991). "The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review." *Id.* "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Diamond*, 83 A.3d 119, 126 (Pa. 2013).

In pertinent part, conspiracy is defined as follows:

**(a) Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

\*\*\*

**(e) Overt act.**—No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

- 4 -

18 Pa.C.S.A. § 903. Simplified, this requires proof of three elements: 1) an agreement, 2) shared criminal intent, and 3) an overt act. *See Commonwealth v. Murphy*, 795 A.2d 1025, 1037–38 (Pa. Super. 2002). Moreover, the conspiratorial agreement and shared criminal intent may be proven by circumstantial evidence. As we have stated:

> An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy.

*Id.* at 1038 (quoting *Commonwealth v. Johnson*, 719 A.2d 778, 784–85 (Pa. Super. 1998) (*en banc*)), *appeal denied*, 739 A.2d 1056 (Pa. 1999) (citations and internal quotations omitted).

The trial court, in concluding that the evidence was sufficient to support Todd's conviction for conspiracy, first noted that the facts clearly demonstrated that Todd possessed the marijuana with the intent to deliver.

> Sergeant Kenneth Rutherford, Jr., testified without objection as an expert in narcotics and narcotics investigations. Sergeant Rutherford reviewed the evidence that was seized and the circumstances of the seizure and opined that the marijuana was possessed with the intent to deliver. His opinion was based on the fact that [Todd] held the bulk of the marijuana in her purse in proximity to the fifty pink unused vials that were in the glove

compartment. The pink vials would each hold about 1/2 a gram of marijuana. The green vials that were removed from Hollis's person contained .49 grams of marijuana. On average a 1/2 gram vial of marijuana will sell for five dollars on the street. Drug dealers commonly fill small vials like the fifty pink vials seized for 1/2 gram quantity sales. ***When drug dealers are working together*** it is common for one person to hold onto cash and the other to carry the marijuana or other controlled substances.

Trial Court Opinion, 1/15/19, at 6 (citations omitted)(emphasis added). Todd did not appeal her conviction for possession with intent to deliver.

Turning to the conspiracy charge, the trial court explained as follows:

The same evidence, when considered along with the additional circumstances surrounding [Todd's] arrest support the finding that [Todd] was engaged in a joint enterprise with Hollis and the two agreed to engage in the sale of marijuana together. [Todd] held the bulk of the marijuana. When they were stopped Hollis made furtive gestures in the passenger compartment and attempted to avoid arrest by disposing of the controlled substances that were on his person. [Todd] tried to assist Hollis by interfering with his arrest at a time when she had 10.44 grams of marijuana sitting in her purse and implements of sale in the form of unused half-gram vials within her reach. While [Todd] argued at trial that she only happened to be in a car with a drug dealer but was not guilty of the crimes charged, the totality of the evidence demonstrates that she was in a car with a drug dealer because she was complicit in the possession with intent to deliver and actively participated in the conspiracy charged.

Trial Court Opinion, 1/15/19, at 7 (citations omitted).

Based upon our review of the record, and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we agree with the trial court and conclude that there was sufficient evidence to prove beyond a reasonable doubt that Todd was engaged in a conspiracy with Hollis to deliver the drugs in her possession. Both Todd and Hollis had drugs on them

in amounts inconsistent with personal use. Todd also had constructive possession of paraphernalia consistent with dealing. Additionally, Sergeant Rutherford, who testified as an expert, opined that the circumstances such as in this case, where one dealer holds the cash and the other holds the contraband, indicated that Todd and Hollis were working together. Each had a role in the conspiracy to accomplish the overall goal of selling the drugs. Moreover, after being pulled over, Todd acted in manner to protect her co-conspirator and herself from arrest and discovery of their activity. These factors were sufficient for the trial court to infer that Todd and Hollis had a shared criminal intent to deliver the drugs and worked together as conspirators to do so.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/13/19