J-S03010-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| NICHOLAS JOHN CALDWELL | : | |
| | : | |
| Appellant | : | No. 932 WDA 2021 |

Appeal from the Judgment of Sentence Entered July 27, 2021
In the Court of Common Pleas of Crawford County Criminal Division at
No(s): CP-20-CR-0000989-2020

BEFORE: LAZARUS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.:         **FILED: April 26, 2022**

      Nicholas John Caldwell appeals from the judgment of sentence, entered in the Court of Common Pleas of Crawford County, following his convictions of driving under the influence - controlled substances schedule I (DUI – schedule I),[1] driving under the influence - controlled substances schedule II or III (DUI – schedule II or III),[2] and driving under the influence - combination of drugs (DUI – combination).[3] Upon review, we reverse and vacate Caldwell's convictions.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 3802(d)(1)(i).

[2] *Id.* at § 3802(d)(1)(ii).

[3] *Id.* at § 3802(d)(2).

On August 23, 2020, Officers David Brooks and Bob Anderson were on routine patrol in Titusville. At approximately 12:13 a.m., the officers were conducting a traffic stop of an unrelated vehicle when they observed a Silver Ford Explorer park across from them on the street. The vehicle stayed there for approximately 30 seconds before driving away. The officers noted this behavior as odd,[4] but did not stop the vehicle.

Approximately 30 minutes later, the officers had resumed their patrol and noted the same Silver Ford Explorer parked in the parking lot of a closed GetGo gas station. The Silver Ford Explorer was the only vehicle in the parking lot as the GetGo closed at 12:00 a.m. during the COVID-19 pandemic. The GetGo was located approximately three blocks away from the above-described traffic stop.

The officers pulled into the parking lot, exited their cruiser, and approached the driver side of the vehicle. Upon their approach, the officers noted that both the front driver's side and rear driver's side doors were open. Additionally, the officers observed that the lone occupant of the vehicle, a male, later identified as Caldwell, was hunched over on the back seat of the car. Caldwell was positioned torso-down on the back seat of the vehicle, with his legs and feet extending outside of the rear driver's side door.

_____

[4] Additionally, the officers believed this vehicle to be suspicious because they had received a dispatch, at approximately 11:30 p.m., of a "complaint about a suspicious vehicle that had pulled up next to [the caller] on Rockwood Drive. The driver of [the Silver Ford Explorer] . . . asked if [the caller] had shot at the driver." N.T. Trial, 6/4/21, at 8. This testimony was admitted for the purpose of establishing why the officers were familiar with the vehicle. *Id.*

The officers announced themselves several times, but Caldwell was unresponsive and appeared unconscious. After shaking Caldwell a few times, Officer Anderson was able to awaken him. The officers explained to Caldwell that the GetGo was closed and that they became concerned upon seeing him hunched over the back seat and not moving. Caldwell responded that he did not notice the "closed" sign on the GetGo doors. Caldwell also informed the officers that he had been driving the Silver Ford Explorer earlier in the night, when the officers had conducted the 12:13 a.m. traffic stop.

During this conversation, the officers observed that Caldwell was sweating profusely, was unsteady on his feet, and had slurred speech. The officers asked Caldwell if he had consumed any alcohol or drugs, to which Caldwell responded that he had drank approximately three to four beers and taken two doses of NyQuil between 4 p.m. and 10 p.m. that day. Caldwell blew into a portable breath test device which resulted in a 0.000% reading. The officers requested to search Caldwell and his vehicle, and Caldwell consented. Neither search recovered illegal contraband.

The officers directed Caldwell to perform field sobriety tests, which Caldwell failed. Subsequently, Caldwell consented to a blood draw at Titusville Hospital, which was sent to NMS labs. Caldwell's blood tested positive for methamphetamine, Diazapam, amphetamine, Nordiazepam, Methadone, and Zolpidem.

On June 4, 2021, Caldwell proceeded to a non-jury trial and, after the close of the Commonwealth's evidence, moved for demurrer, arguing that the

Commonwealth had failed to prove he was under the influence at the time he operated the Silver Ford Explorer at 12:13 a.m, and that the Commonwealth had failed to prove that Caldwell was in physical control of the Silver Ford Explorer when the officers encountered him in the GetGo parking lot. The trial court denied Caldwell's motion. Afterwards, Caldwell testified in his own defense,[5] and the Commonwealth re-called Officer Brooks as a rebuttal witness.

At the close of trial, the trial court convicted Caldwell of the above-mentioned DUI offenses. On August 6, 2021, the trial court sentenced Caldwell to a period of 72 hours to 6 months in prison. Additionally, Caldwell indicated that he intended to appeal, and filed a motion pending the outcome of this appeal. The trial court granted Caldwell's motion and continued Caldwell's bail.

Caldwell filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Caldwell now raises the following claims for our review:

> 1. Whether [] Caldwell's conviction[s] for DUI . . . must be reversed, and his judgment of sentence in this regard must be vacated, when the Commonwealth failed to prove, beyond a reasonable doubt, that [] Caldwell operated his car when there

---

[5] Caldwell testified that he had purchased a "speedball" earlier in the day, because he had been arguing with his girlfriend. A speedball is a concoction of drugs, typically methamphetamine and heroin, that can be injected. Additionally, he testified that he stopped at GetGo to buy a cigarettes, but he was unable to get inside. Caldwell testified that, in his frustration, he decided to take the speedball in the parking lot. However, the speedball was not what he was used to, and he passed out in the back seat.

was any amount of Schedule I, II, or III Controlled Substance in his blood?

2. Whether [] Caldwell's conviction for DUI . . . must be reversed, and his judgment of sentence in this regard must be vacated, when the Commonwealth failed to prove, beyond a reasonable doubt, that [] Caldwell operated his car at a time when there was any amount of drug or combination of drugs in his blood?

3. Whether [] Caldwell's conviction[s] for DUI . . . must be reversed, and his judgment of sentence in this regard must be vacated, because the trial court erred in denying [] Caldwell's [m]otion for [d]emurrer at the close of the Commonwealth's case, when, even looking at the evidence in the light most favorable to the Commonwealth, the Commonwealth failed to prove, beyond a reasonable doubt, that [] Caldwell operated his car at a time he had any level of Schedule I, II, or III controlled substance in his blood?

Brief for Appellant, at 9-10.

We address Caldwell's claims together, as he does so in his brief. All of Caldwell's claims challenge the sufficiency of the evidence, for which we adhere to the following standard of review:

[W]hether[,] viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding the defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and weight of the

evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Gause*, 164 A.3d 532, 540-41 (Pa. Super. 2017) (en banc) (citation omitted). Additionally, although the fact-finder may make reasonable inferences from the testimony presented, the "inferences must flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the [fact-finder] of an accused's guilt beyond a reasonable doubt." *Commonwealth v. Scott*, 597 A.2d 1220, 1221 (Pa. Super. 1991). "The trier of fact cannot base a conviction on conjecture and speculation and a verdict [that] is premised on suspicion will fail even under the limited scrutiny of appellate review." *Id.* Our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Diamond*, 83 A.3d 119, 126 (Pa. 2013).

Caldwell argues that the Commonwealth's evidence was insufficient as a matter of law to sustain his DUI convictions. Brief for Appellant, at 16-17. Caldwell contends that, in order to prove a DUI violation under subsections 3802(d)(1) and (2), the Commonwealth must prove that Caldwell was impaired and in physical control of the vehicle. *Id.* at 16-18. Caldwell acknowledges that the Commonwealth may use wholly circumstantial evidence to satisfy the elements of DUI. *Id.* at 18. But, Caldwell asserts that the Commonwealth must present "other objective evidence establishing the timeframe between the [defendant's] driving and the [defendant's] intoxication." *Id.* at 19-20.

- 6 -

DUI is defined, in relevant parts, as follows:

**(d) Controlled substances.**--An individual may not drive, operate, or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(1) there is in the individual's blood any amount of a:

(i) Schedule I controlled substance, as defined in the act of April 14, 1972[], known as The Controlled Substance Drug, Device and Cosmetic Act;

(ii) Schedule II or Schedule III controlled substance, as defined in The Controlled Substance, Drug, Device and Cosmetic Act, which has not been medically prescribed for the individual[]

\*    \*    \*

(2) The individual is under the influence of a drug or combination of drugs to a degree which **impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.**

75 Pa.C.S.A. §§ 3802(d)(1)-(2) (emphasis added).

We begin our analysis with the 12:46 a.m. GetGo parking lot encounter. Initially, we agree that Caldwell was not in control of the vehicle at that time. At trial, the trial court stated "the evidence does not establish [Caldwell] was in control of the vehicle at the Get[G]o parking lot[.]" N.T. Trial, 6/4/21, at 78. Indeed, the police testified that they found Caldwell passed out, half-in and half-out of the back seat of the vehicle, with both driver's side doors open. *Id.* at 10-11, 38-39. The officers further testified that it was difficult to rouse Caldwell and that he was unsteady on his feet and slurring his words. *Id.* at 11-13, 38-39. Furthermore, the officers could not recall if the engine was on

or had recently been running. *See id.* at 30. In addition, the record is devoid of evidence that would establish where the vehicle's keys were located, whether the headlights were on, or any other specifics regarding the vehicle's operation. Thus, Caldwell was not in actual physical control of the vehicle at 12:46 a.m., and Caldwell's convictions cannot stand based upon the 12:46 a.m. GetGo parking lot encounter.

Next, we address the 12:13 a.m. encounter, when the police first observed Caldwell's Silver Ford Explorer during an unrelated traffic stop. The trial court concluded that Caldwell was DUI at that time. *Id.* at 78. As discussed below, we disagree, and conclude that the evidence, even in the light most favorable to the Commonwealth, does not support this conclusion. *See Gause*, *supra*.

The officers observed the Silver Ford Explorer parked across the street during an unrelated traffic stop at 12:13 a.m. N.T. Trial, 6/4/21, at 7-8. The Silver Ford Explorer stayed there for approximately 30 seconds. *Id.* at 33. At this time, both officers testified that they did not observe any signs of impairment because they: (1) could not see into the vehicle; (2) were not paying attention to the vehicle due to their involvement with the traffic stop; and (3) did not observe any traffic violations. *Id.* at 32-33, 37, 42. At the subsequent 12:46 a.m. GetGo encounter, Caldwell admitted to the police that he had operated Silver Ford Explorer when the police observed it at the 12:13 a.m. encounter. *Id.* at 43. Additionally, Caldwell's subsequent blood test

revealed a cocktail of amphetamines and narcotics. Commonwealth Exhibit 2 (Toxicology Report), at 1-5.

However, this evidence, even when coupled with the lack of paraphernalia or drugs located in the car,[6] *see* N.T. 6/4/21, at 18, is **not** enough to support Caldwell's DUI convictions. Our review of the record reveals that none of the Commonwealth's evidence establishes **when** Caldwell took the drugs. Rather, there is a 30-minute gap between when the police initially observed Caldwell's vehicle at 12:13 a.m., and when they encountered Caldwell in the GetGo parking lot at 12:46 a.m. Further, Caldwell made no statements to the officers regarding **when** he took the drugs. Rather, the Commonwealth's evidence merely establishes that, at some point prior to the 12:46 a.m. encounter, Caldwell took the drugs and became impaired. Even viewing the evidence in favor of the Commonwealth, this Court is still required to speculate as to the timeline of events and, thus, we are constrained to conclude that the Commonwealth presented insufficient evidence regarding Caldwell's alleged impairment at 12:13 a.m. Therefore, we conclude that the Commonwealth failed to present sufficient evidence of Caldwell's DUI convictions. ***See Gause***, ***supra***; ***Scott***, ***supra***.

_____

[6] The Commonwealth argues that the absence of this contraband necessitates that Caldwell must have consumed the drugs prior to driving at 12:13 a.m. Commonwealth's Brief, at 10, 13-14. We disagree. As we discuss *infra*, the Commonwealth's evidence still requires speculation as to the timeline of when Caldwell consumed the drugs. ***See Scott***, ***supra***.

In reaching this conclusion, we emphasize that the Commonwealth did not present any expert testimony to establish a timeline based upon Caldwell's metabolite levels.[7] Moreover, the Commonwealth did not introduce any other evidence that would establish when Caldwell took the drugs. **Cf. Commonwealth v. Segida**, 985 A.2d 871, 880 (Pa. 2009) (Commonwealth proved impairment at time of driving where defendant caused vehicle accident, and admitted to drinking at nearby club with 0.326 percent BAC); **Commonwealth v. LaBenne**, 21 A.3d 1287, 1290-91 (Pa. Super. 2011) (Commonwealth proved impairment at time of driving where police observed defendant's erratic driving, and defendant admitted to drug consumption prior to driving, among other factors). Therefore, we cannot conclude, beyond a reasonable doubt, that the Caldwell was impaired at 12:13 a.m. when the officers first observed his vehicle. Accordingly, the Commonwealth presented insufficient evidence to sustain Caldwell's convictions. We reverse and vacate the DUI convictions.

Judgment of sentence reversed and convictions vacated. Caldwell is discharged.

---

[7] We are cognizant that expert testimony is not always necessary, nor is it an element of these offenses. **See Commonwealth v. Griffith**, 32 A.3d 1231, 1238-39 (Pa. 2011) (expert testimony not mandatory in all DUI prosecutions, but "in some cases . . . expert testimony may be helpful, or perhaps even necessary"). Indeed, in a factual scenario such as the one before this Court, expert testimony may have enabled the Commonwealth to meet its burden of proof. **See id.** Nevertheless, the facts before this Court include nothing more than those summarized above and, thus, we reverse and vacate Caldwell's convictions. **See Gause**, **supra**.

- 10 -

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/26/2022