J-A10043-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VICTOR BROWN | : | |
| | : | |
| Appellant | : | No. 1542 EDA 2020 |

Appeal from the Judgment of Sentence Entered May 21, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0010011-2016

BEFORE:   PANELLA, P.J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED JUNE 17, 2021**

Victor Brown appeals his judgment of sentence[1] entered by the Court of

Common Pleas of Philadelphia County. Brown's judgment of sentence followed

a joint jury trial with a co-defendant. Ultimately the jury convicted Brown of

third-degree murder, conspiracy to commit murder, carrying a firearm without

a license, carrying a firearm in public in Philadelphia, and possession of an

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Brown purports to appeal from the June 7, 2018 order denying his post-sentence motion. However, '[i]n a criminal action, appeal properly lies from the judgment of sentence made final by the denial of the post-sentence motions." **Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*). Therefore, "the appeal is taken from the judgment of sentence, not the order denying post-sentence motions." **Commonwealth v. Chamberlain**, 658 A.2d 395, 397 (Pa. Super. 1995). The caption has been corrected to address this date discrepancy.

instrument of crime.[2] The court sentenced Brown to an aggregate sentence of twenty-two-and-one-half to forty-five years of imprisonment. On appeal, Brown challenges both the sufficiency and weight of the evidence that resulted in his third-degree murder conviction. Moreover, Brown presents an abuse of discretion in sentencing claim. As we see no merit to any of Brown's three contentions, we affirm his judgment of sentence.

In summary, Brown's convictions stem from the shooting death of Sharif Derry ("the decedent"). At the time of the shooting, the decedent and a close friend were outside of that friend's house. At some point, when the friend attempted to move his car, he noticed someone in the middle of the street with a gun. Simultaneously, the decedent observed this gun-wielding person and ran to the friend's vehicle to grab a firearm from its back seat. Gunfire ensued, and the friend, who hid from the exchange, eventually found the decedent lying on the ground in a nearby alleyway.

While the friend testified at trial that he was unaware of any animosity between the decedent and others, his grand jury testimony contradicted this assertion. Instead, his grand jury testimony established some sort of problem between the decedent and individuals living in a particular neighborhood. This inconsistency led to the friend's impeachment at trial. However, his grand jury testimony was entered into the record as substantive evidence. While the friend could not discern the shooter's face specifically, he believed it was

---

[2] **See** 18 Pa.C.S.A. § 2502(c); 18 Pa.C.S.A. 903; 18 Pa.C.S.A. § 6106; 18 Pa.C.S.A. § 6108; and 18 Pa.C.S.A. § 907(a), respectively.

Brown's co-defendant based on his physical appearance. In addition, the friend identified a photo of Brown's co-defendant as the shooter he had observed.

Testimony from another witness, Daniel Thompson, indicated that, at some point prior to the shooting death in this matter, Brown, along with a few others, had been shot. Brown conveyed to this witness that the decedent had been at least one of the people shooting at him during this earlier shooting incident. Brown also remarked to this person that when the decedent escaped from the gunfire coming from Brown's co-defendant, it was Brown who shot him when he entered the alleyway. As he was in jail at the time, Thompson was not present during the gunfire that resulted in the decedent's death.

A further witness recounted a barrage of gunfire between the decedent and Brown. That witness later would later positively identify Brown as the man he saw opposite the decedent in the gunfire.

After the shooting, police officers received a radio call referencing an individual with a gun, and when those officers arrived on site, they discovered the decedent. The decedent was pronounced dead shortly after his arrival to a hospital by ambulance.

Following sentencing, Brown filed a post-sentence motion that was subsequently denied. Brown filed a timely notice of appeal to this Court, but that appeal was dismissed for failure to file a brief.

Brown sought redress under the Post Conviction Relief Act and was granted the ability to file an appeal from his judgment of sentence *nunc pro*

*tunc*. After the restoration of his appellate rights, Brown filed a timely notice of appeal, and the relevant parties have complied with their respective obligations under Pa.R.A.P. 1925.

On appeal, Brown presents the following issues for our review:

1. Was the evidence sufficient to convict Brown of third-degree murder?

2. Was the verdict for third-degree murder against the weight of the evidence?

3. Did the sentencing court abuse its discretion in sentencing Brown to twenty-two-and-one-half years to forty-five years of incarceration?

*See* Appellant's Brief, at 5.

By contesting the sufficiency of the evidence, Brown presents a question of law, which is reviewed by this Court *de novo*. ***See Commonwealth v. Antidormi***, 84 A.3d 736, 756 (Pa. Super. 2014). Accordingly, our standard of review for a challenge to the sufficiency of the evidence is well-settled.

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the [specifically contested] offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

***Commonwealth v. Koch***, 39 A.3d 996, 1001 (Pa. Super. 2011) (citations omitted) (alteration added). Further, "[a]ny doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and

inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***Commonwealth v. Perez***, 931 A.2d 703, 707 (Pa. Super. 2007) (citation omitted); ***see also Commonwealth v. Scott***, 597 A.2d 1220, 1221 (Pa. Super. 1991) (establishing that a conviction cannot be based purely on "conjecture and speculation").

While he was convicted of other offenses, Brown's challenge on appeal singularly questions the evidence that resulted in his third-degree murder conviction. However, Brown dedicates only two sentences in his brief to why he believes the evidence was insufficient. **See** Appellant's Brief, at 8. Briefly, Brown asserts that the only direct evidence against him was Thompson's testimony. Brown attempts to controvert Thompson's testimony by indicating that Thompson: 1) was not present for the shooting death of the decedent; and 2) was impeached at trial due to prior inconsistent statements.

Third-degree murder is defined as "[a]ll other kinds of murder[.]" 18 Pa.C.S.A. § 2502(c). As such, third-degree murder is not "an intentional killing," 18 Pa.C.S.A. § 2502(a) (first-degree murder), nor is it "[a] criminal homicide … committed while [the] defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S.A. 2502(b) (second-degree murder). Third-degree murder requires the Commonwealth to prove beyond a reasonable doubt that a defendant killed another individual with malice. ***See Commonwealth v. Devine***, 262 A.3d 1139, 1146 (Pa. Super. 2011). "Malice is established where an actor consciously disregards an

unjustified and extremely high risk that his actions might cause death or serious bodily harm." *Id*. (citation and internal quotation marks omitted).

Preliminarily, we note that Brown's support for his sufficiency argument comes exclusively in the form of attacking the credibility of a witness. Such a contention is germane *only* to a challenge to the weight, rather than the sufficiency, of the evidence. ***See, e.g.***, ***Commonwealth v. Cramer***, 195 A.3d 594, 600 (Pa. Super. 2018) ("The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses.") (citation omitted). For that reason alone, Brown's sufficiency claim fails.

However, substantively, Brown does not identify with any sort of particularity which element or elements of his third-degree murder conviction was or were insufficient as a matter of law. In any event, through our independent review of the record, cognizant of the deference given to the Commonwealth as verdict winner and acknowledgment that evidence can be purely circumstantial, we find there to be sufficient evidence to adjudicate Brown's guilt beyond a reasonable doubt.

Collectively, the witnesses present for the shooting, who also had familiarity with Brown, described the two-part nature of the shooting, with Brown's co-defendant initiating the firearm salvo on the street and Brown concluding the gunfire against the decedent in the alleyway. Moreover, ballistics evidence materially corroborated the witnesses' testimonies insofar

as they affirmed the two areas of weapons dischargement. Finally, Brown's admission to Thompson that he waited in the alleyway for the decedent and killed him additionally reinforces the fact that the statutory elements of third-degree murder, killing another individual coupled with malice, have been adequately proven by the Commonwealth beyond a reasonable doubt. Therefore, Brown is due no relief on this issue.

Brown next asserts that his third-degree murder conviction was against the weight of the evidence. A weight of the evidence claim requires review of "the trial court's exercise of discretion." **Commonwealth v. Johnson**, 192 A.3d 1149, 1152-53 (Pa. Super. 2018) (citation omitted). Unless the verdict is so contrary to the evidence "as to shock one's sense of justice," **id**. (citation omitted), we may not reverse. As previously stated, the onus is on the finder of fact to ascertain the credibility of witnesses. **See Cramer**. Furthermore, the finder of fact is charged with resolving contradictory testimony. **See id**., 195 A.3d at 600. The trial court's decision as to a weight of the evidence claim is given a tremendous amount of deference, as it is in the best position to hear, see, and ascribe meaning to the evidence presented. **See id**.; **see also Commonwealth v. Diggs**, 949 A.2d 873, 879-80 (Pa. 2008) (describing the denial of a motion for a new trial predicated on a weight of the evidence claim as "the least assailable" of a trial court's rulings).

Brown's analysis in this section of his brief is, much like his sufficiency claim, severely underdeveloped and largely repetitious of what has already

been stated. Essentially, Brown, again, contests Thompson's impeached testimony, claiming it to be the "only direct evidence," Appellant's Brief, at 10, against him.

As credibility issues are purely the prerogative of the jury, "appellate courts rarely overturn jury factual findings that are based on credibility determinations." *Commonwealth v. Burns*, 765 A.2d 1144, 1149 (Pa. Super. 2000). Other than using quotation marks to describe the confessional nature of Brown confiding in Thompson, *see* Appellant's Brief, at 10, and illuminating Thompson's impeachment, Brown does not indicate how the evidence at trial, when looking at it in its totality, shocks one's sense of justice. Simply put, it was more than just Thompson's testimony that the Commonwealth used against him at trial. There were various other witnesses as well as the ballistics evidence that, at a minimum, circumstantially tied Brown to the commission of third-degree murder.

Brown has failed to make any kind of compelling argument that could effectively strike the evidence not derived from Thompson's testimony. However, even as to Thompson's testimony, "[i]t was exclusively within the jury's province to weigh [this] matter." *Commonwealth v. Champney*, 832 A.2d 403, 409 (Pa. 2003). Any type of attack as to the relevance or legitimacy of Thompson's testimony "were points he was free to argue at trial." *Id*., at 408-09. While there may have been some discrepancies or inconsistencies in in Thompson's testimony, his statements were largely validated by those who

were eyewitnesses to the shooting incident.

Reversal of a weight of the evidence ruling is an extraordinary outcome. This matter is not one of those cases because the trial court did not abuse its discretion in finding the jury's conclusions to not shock one's sense of justice. Accordingly, Brown's weight of the evidence claim fails.

In his final averment, Brown asserts that the sentencing court abused its discretion in crafting his term of imprisonment. Brown's brief contains three bases in support: 1) the court failed to properly consider the 42 Pa.C.S.A. § 9721 sentencing factors; 2) the court failed to account for mitigation evidence; and 3) the court imposed a disparate sentence in comparison to his co-defendant's sentence. *See* Appellant's Brief, at 11.

Our Court considers challenges to the discretionary aspects of a sentence "a petition for permission to appeal" because an appellant does not have an absolute right to review in this domain. ***Commonwealth v. Hill***, 66 A.3d 365, 368 (Pa. Super. 2013). To invoke this Court's jurisdiction, we review the record to determine whether:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

***Commonwealth v. Baker***, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted). As to what constitutes a "substantial question," the appellant must set forth "a plausible argument that the sentence violates a provision of the

- 9 -

sentencing code or is contrary to the fundamental norms of the sentencing process." **Commonwealth v. Dodge**, 77 A.3d 1263, 1268 (Pa. Super. 2013) (citations and internal quotation marks omitted). We determine whether a substantial question has been invoked on a case-by-case basis. **See Commonwealth v. Fisher**, 47 A.3d 155, 159 (Pa. Super. 2012).

As he has met the first three elements necessary for our review, the only outstanding question related to jurisdiction is whether Brown has raised a substantial question. In his 2119(f) statement, Brown highlights the three areas where he contends the court either overlooked or abused its discretion. Again, we note that, much like the rest of his brief, his 2119(f) statement fails to adequately develop any kind of in-depth legal analysis. Furthermore, his statement reads in a conclusory manner and is largely unsupported by relevant citations. Faced with these deficiencies, Brown has arguably waived his right to review his substantive discretionary sentencing claim. Even taking a broad perspective, several of the questions Brown raises are not individually substantial. **See, e.g.**, **Commonwealth v. Matroni**, 923 A.2d 444, 445 (Pa. Super. 2007) (identifying that inadequate consideration of mitigating factors, by itself, does not raise a substantial question). However, with that in mind, through the most generous reading possible of his 2119(f) statement, we find that Brown has raised a substantial question because he simultaneously contends that his sentence was excessive and that the court failed to consider mitigating factors. **See Commonwealth v. Samuel**, 102 A.3d 1001, 1007

(Pa. Super. 2014).

In looking at his substantive sentencing claim, Brown asserts that the court "imposed an aggregate sentence five … years over the lower guideline range without sufficient reasons." Appellant's Brief, at 12. Other than one record citation to the court's sentencing scheme, Brown does not identify where there has been any specific deficiency–either in the consideration of his sentence or the ultimate disposition of his case. Seemingly, too, he has abandoned all claims that his sentence was disparate to his co-defendant's as it is not mentioned at all after this issue's first paragraph.[3]

Brown's sentence for third-degree murder was within the sentencing guidelines. Because of this, Brown must prove that the sentencing guidelines were erroneously applied, **see** 42 Pa.C.S.A. § 9781(c)(1), or "clearly unreasonable." 42 Pa.C.S.A. § 9781(c)(2). Brown fails to develop either pathway to relief.

Here, the court stated on the record that it reviewed Brown's pre-sentence report. **See** N.T., 5/21/18, at 26-27. Through that acknowledgment, our Court "can assume the sentencing court was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating factors." **Commonwealth v. Corley**, 31

---

[3] Even if we were to review this claim, he would be due no relief. The trial court illuminated the "prior record score" differences between Brown and his co-defendant to demonstrate why there was a sentencing discrepancy. **See** Trial Court Opinion, 10/5/20, at 13.

A.3d 293, 298 (Pa. Super. 2011) (citation and internal quotation marks omitted). Other than claiming the court constructed his sentence "without sufficient reasons," Appellant's Brief, at 12, Brown has offered nothing to contradict the court's review of his pre-sentence report. Accordingly, after reading the sentencing testimony, we perceive no reason to disturb what is clearly not an unreasonable sentence.

As Brown has not presented this Court with any meritorious issues requiring relief, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/17/2021